that he could drive by the car before the plaintiff would get off the car onto the pavement; that, because of the failure of defendant to drive by before plaintiff got off the car, the defendant's wagon wheels hit the plaintiff and caused the injury. The defendant apparently realized that, if he did not get by before the plaintiff got off the car, he would be likely to hit the plaintiff. It was for the jury to say whether it was negligence on the part of defendant to drive so close to a stopping car that he would be likely to hit a passenger whom he saw standing on the step facing in an opposite direction, apparently ready to step off, unless he drove past the car before the passenger got off. The defendant assumed the chance of being able to drive past the car before the plaintiff alighted. He did not succeed. The plaintiff had a right to have the jury determine whether the defendant exercised ordinary care in driving past the car under the above circumstances.

While it is true that most, if not all, of the foregoing facts were disputed by witnesses produced by the defendant, yet on the question of nonsuit all disputed facts are to be regarded in favor of the plaintiff, and all inferences are conceded to him.

Judgment reversed. New trial ordered in Municipal Court on October 4, 1909, at 10 a. m. Costs to abide event.

---

### BARNETT v. VAUGHAN INSTITUTE.

(Supreme Court, Appellate Division, Second Department. October 12, 1909.)

1. COVENANTS (§ 103*)—BUILDING RESTRICTIONS—CONSTRUCTION—"PRIVATE HOUSE"—"DWELLING HOUSE."

A restrictive building covenant, stipulating that the buildings erected on the premises shall be first-class "private houses" prohibits the use of a private dwelling on the premises for a private sanitarium; for a "private house" is a "private dwelling" intended for private living, and a private dwelling is a "dwelling house" in which a person or family lives in an individual or private state.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec Dig. § 103.*

For other definitions, see Words and Phrases, vol. 6, pp. 5572, 5573.]

2. INJUNCTION (§ 62*)—BUILDING RESTRICTIONS—ENFORCEMENT.

A restrictive building covenant will be enforced in equity, though its violation does not impair the value of the property, or though a violation even increases the value.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 124–127; Dec. Dig. § 62;* Deeds, Cent. Dig. § 546.]

3. COVENANTS (§ 103*)—BUILDING RESTRICTIONS—VIOLATIONS.

A restrictive building covenant, stipulating that the buildings erected on the premises shall be first-class private houses and shall stand back at least 20 feet from the street line, is not violated by moving a first-class dwelling to the rear of a first-class private house erected in accordance with the covenant, with a space between the two buildings.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169,; Dec. Dig. § 103.*]

Appeal from Special Term, Kings County.

Action by Lissa M. Barnett against the Vaughan Institute. From a judgment for plaintiff, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of Mr. Justice Thomas at Special Term:

Plaintiff, owner of and resident at 1030 Park Place, Brooklyn, conveyed unimproved land adjoining on the east under the restriction "that the buildings erected upon the above-described premises shall be first-class private houses and shall stand back at least 20 feet from the street line of Park Place. This covenant is a real covenant, running with the land and binding * * * until the 1st day of December, 1912. * * *" Thereafter a large, first-class private house was erected on the land, and the owner of 1040 Park Place, the premises restricted, has purchased another first-class dwelling house, and, since this action was begun, has moved the same to the rear of the house erected on such premises, with a space between the two buildings. Without material structural changes the defendant uses the first house for a private sanitarium, and intends to use the second house for the same purpose. The first house accommodates about 16 persons, and the second house will accommodate about 25 persons. The persons received upon application are those suffering from nervous diseases and their accompanying friends. The plaintiff seeks to enjoin the establishment of the second house on the premises upon the ground that, in its relation to the other house, it would not be structurally a first-class dwelling house, and also seeks to enjoin the use of either house for the purpose for which defendant uses the front house.

The question is whether the use of the premises for a private sanitarium violates the restriction. I understand the defendant's argument to be that, as regards the covenant, if the building in structure be a private house, the nature of its use is immaterial; that the violation must be architectural; that if the structure be sufficient in form the occupation may be as the owner wills. The defendant's contention leads to this: If the structure has the semblance of a first-class private dwelling, it may be, in fact, so far as the covenant is concerned, an orphan asylum, a house of correction, a madhouse, a place for the housing of lepers, a store of any name or nature, perchance a factory—anything that does not involve structural changes that would obscure its physical conformity to a private dwelling. In other words, the covenant would not be violated, however removed the occupation from private—that is, individual—use, and however distasteful, offensive, or dangerous such use might be. I think the covenant has not such meaning, spirit, or intention, but rather that it intends, and should be interpreted to mean, that the structure should look like a first-class private house and should be such, not that it should look like a private house and be an insane asylum.

A "private house" is a private dwelling. A dwelling is a "place or house in which a person lives." Webster's Dictionary. A private dwelling is a place or house in which a person or family lives in an individual or private state. The words "dwelling house" involve the idea of a house, a residence, where persons live in settled abode. A dwelling house is a "house intended to be occupied as a residence, in distinction from a store, office, or other building." Webster's Dictionary. A private dwelling house is one intended for private living. In these days of apartments, I am not giving to the words a narrow meaning. But a house intended for a private residence or home is not intended for a place for the temporary gathering of diseased persons for treatment. If the covenant means that there shall be erected on the premises only buildings intended for a house or private dwelling, it is the merest evasion to defeat the intention by using the structure for what a private dwelling is not used. Then that which was a private dwelling is no longer such. It is not a place where a person or persons reside. It is in this instance the seat of the Vaughan Institute, an entity incorporated for the purpose of treating persons afflicted with rheumatism or nervous diseases, for education respecting the same, for manufacturing and selling remedies, etc., and such institute uses said premises for treatment of persons pursuant to its charter. The building looks like a private dwelling. It is not one. The plain fact is that a dwelling house is recognized by its appearance and use. If it be appointed to a business, it is a dwelling house no longer, save to those ignorant of its use. I would preserve the substance of the covenant and enforce it according to the ordinary intendment of the words used.

It is urged that there is no depreciation of value to plaintiff's property from this sanitarium, and that this court should not interfere. The covenant was permissibly made and was appropriate for the location. If it is a binding and honorable obligation, I can see no reason for a court of equity requiring that it shall have a commercial value before enforcing it. The mere fact that the diversion of residential property to other uses would not impair, or would even increase, its value, does not make the violation of a covenant honest or legal. There are other values than those of a property nature entitled to protection. What a mocking it would be for a court of equity to assert that, as substantial damage in money was not shown, the suitor should be sent to a court of law, when he could recover only nominal damages, and as a result have the expense of litigation and no adequate redress. The parties had a right to make the covenant, and have a right to have it protected.

The plaintiff insists that the defendant should be enjoined from moving the second house on the premises, or maintaining it thereon. I think this would be going too far. The two houses, separated or conjoined, might not accord with the highest and best standards of architectural judgment. But dimensions are not a sure criterion, and what to the eye of one seems unfitting to that of another seems harmonious. There are houses that cost largely and are approved by architects of repute that seem disproportioned and ugly, or even grotesque, to others. The decree will enjoin the defendant from carrying on its business on the premises, and will be settled on notice.

Inasmuch as the enforcement of the decree might disturb the sick persons on the premises, it will not be enforced before July 1, 1909, which will enable the defendant to review this decision, if it is so advised, and act promptly thereon.

Argued before JENKS, GAYNOR, BURR, RICH, and MILLER, JJ.

Briesen & Knauth, for appellant.
Heyn & Covington, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Thomas at Special Term.

---

(134 App. Div. 353.)

HOLTZOFF v. DODGE & OLCOTT CO.

(Supreme Court, Appellate Division, First Department. October 22, 1909.)

1. DISMISSAL AND NONSUIT (§ 60*)—GROUNDS—WANT OF PROSECUTION—EXCUSE.

Summons was served June 15, 1906, and issue joined December 7th thereafter; but plaintiff did not notice the case for trial, nor file a note of issue, until after a motion to dismiss for want of prosecution, made returnable May 25th, 1909, was served, during which issues of August 1, 1907, in nonpreferred causes, had been reached for trial in regular order. *Held*, that an affidavit of an attorney, who represented the plaintiff in retaining the attorneys of record to bring the action, that after issue joined he undertook to place the case on the calendar, but that a fire broke out in his offices, and, owing to the fact that the papers had been destroyed, he had no means of knowing that the case was not on the calendar, and only learned that it was not when the papers in the motion to dismiss were served, presented no excuse for the delay, nor defense to the motion.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 140–152; Dec. Dig. § 60.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes