(164 App. Div. 577)

### KALB v. MAYER.

(Supreme Court, Appellate Division, Second Department.   November 27, 1914.)

Covenants (§ 103*) — Restrictions on Use of Building — "One Private Dwelling House."

A restriction requiring a plot of land to be used solely for the purpose of "one private dwelling house" means that it shall be used by one family, composed of persons blended into a single group for usual domestic purposes, and is violated by an arrangement whereby three unrelated families occupied the premises, the lease being in the name of the head of one of them, who managed the household affairs of all, including the furnishing of food, and collected a proportionate amount of the expenses from the other families each week.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*

For other definitions, see Words and Phrases, Second Series, One Dwelling House.]

Appeal from Special Term, Queens County.

Action by John O. Kalb against John G. Mayer.   From an order denying plaintiff's motion for an injunction, plaintiff appeals.   Reversed, and motion granted.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Stanley Holcomb Molleson, of New York City, for appellant.
Emery C. Weller, of New York City, for respondent.

THOMAS, J.   The plot of land of defendant and that of the plaintiff are subject to restrictions.   One is against using any building thereon for a boarding house, and another is that it shall be "used and occupied solely for the purpose of one private dwelling house." During some portion of the summer of 1914, the house was occupied by three families, and for a short period an additional family was accommodated, and a limited number of week-end visitors was permitted to the members of what defendant describes as "an association of three," consisting of himself, Frank Koch, and Mrs. Vandervoort, to whom the premises were rented by oral arrangement.   So the defendant deposes, and he further says that the—

"association were to pay unto your deponent the sum of $50 per week for the rent of said house, and thereafter to run said house on a co-operative plan, the idea being that your deponent as the agent for the three would engage the servants and order the food, keeping books of account as to the total amount expended for food, gas, servants' wages, etc., and the maintenance of said house, and that at the end of each week the said expenses were to be met" by the persons named "in proportion to the number in each family."

There were four persons in defendant's family, six in the Vandervoort family, and four in the Koch family.   The defendant by such arrangement received and contributed his share to the rent, but was paid for the use of the house by the others.   He stipulated for no immediate profit for victualing the tenants, and in that respect he is, as contended, different from a boarding house keeper, although the

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

profit of the table may exist in a cheapened cost of material. I do not conceive that a boarding house keeper is necessarily one who profits from his table. He takes to bed and board presumptively for a profit. There may be no profit in the board, but an intended profit from the entire entertainment. In the present case the defendant rented his house to others, presumably with undivided interests in some parts and exclusive use in bedroom space. He manned the house and acted as purveyor. He says that he was the agent for the three, including himself; but his actual status and service was similar to that of a boarding house keeper, notwithstanding the form of the arrangement.

But I will assume that it was not a boarding house, and the other persons were not boarders and lodgers. In that case the house was not used "solely for the purpose of one private dwelling house." I should say that to use "one private dwelling house" means user by one family (Minister, etc., v. Madison Avenue Building Co., Inc., 163 App. Div. 359, 361, 148 N. Y. Supp. 519)—a family composed of persons blended into a single group for usual domestic purposes. But when three or more—at least those unrelated by family ties—occupy a house, even occupy its living rooms in common, with a common table, the sense of a private dwelling disappears. Whatever the ingenuity of argument, the use of a house for an association of families offends one's conception of the seclusion of a private dwelling house, which is a place where there is intimacy in association and that subjection to a single head that pertains to one family. I do not mean to suggest that the word "family" in its broad sense may not include persons boarding or lodging in the house; but I consider that the definition cannot be widened to include several distinct families, combined only for economic purposes.

But, if defendant elects to term his co-operating families boarders or lodgers, he offends, I think, the restriction against a boarding house. The plot in question, consisting of four lots, is restricted to one private dwelling. If the defendant's construction obtain, the entire plot, subject to other restrictions, could be covered with a building which would permit occupancy by many families under the present arrangement. The congregation of families would be greater than at present, but even now the accumulation of distinct family units in no proper sense constitutes a single family. The lease in form is to the separate heads of three families; the occupation is by three separate families; the bills are paid by three separate families, and once another family was added. The increasing magnitude of the association by multiplication of families may be unlimited, unless the violation of the restriction be enjoined.

The order should be reversed, with $10 costs and disbursements, and the motion for injunction granted, with $10 costs. All concur.