(164 App. Div. 821)

### GOODHUE v. PENNELL et al.

(Supreme Court, Appellate Division, Second Department. December 11, 1914.)

1. COVENANTS (§ 103*)—USE OF REAL PROPERTY—"HABITATION"—"PRIVATE DWELLING."

   A covenant that no building should be erected on the premises other than buildings to be used or occupied or for the purpose of being used or occupied as a private dwelling house or habitation restricts the use of the premises to private dwellings; the word "habitation," in such covenant, not being used in its generic sense as a place of abode, but as synonymous with "dwelling," and a hotel not being a "private dwelling."

   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*

   For other definitions, see Words and Phrases, First and Second Series, Habitation; Private Dwelling.]

2. COVENANTS (§ 103*)—USE OF REAL ESTATE—USE OF BUILDINGS.

   That covenant is not simply a structural covenant requiring the erection of a building that appeared to be a private dwelling, but is also a covenant against the use of such building for hotel purposes.

   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*]

3. INJUNCTION (§ 109*)—DEFENSES—WAIVER—"INTERESTED PERSON."

   The owner of property in a restricted building area cannot be denied relief against the violation of the restrictions by another owner, because there is no other complaint and there is proof that many approved the violation, where there is no proof that all other "interested persons"— that is, property owners within the restricted tract, or most of them— were willing to waive the enforcement of the restriction.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 187; Dec. Dig. § 109.*]

Cross-Appeals from Special Term, Nassau County.

Action by Maria A. Goodhue against George Pennell and another for injunction. From a judgment granting the injunction in part and denying it in part, both parties appeal. Modified and affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Edwin G. Wright, of Rockville Center, for plaintiff.
Henry A. Uterhart, of New York City, for defendants.

JENKS, P. J. These are cross-appeals from a judgment of the Special Term in an action to restrain the defendants, perforce of a covenant in a deed, from using their premises in the hotel business, and from the sale of intoxicants thereon. The judgment that restrains such sale is so clearly right that I confine discussion to the other feature of it.

The covenant reads that neither the parties, nor their heirs or assigns, shall at any time hereafter "erect, cause, procure, permit, or suffer to be erected upon the hereby granted premises, or any part thereof, nor upon any part of the premises shown upon the aforesaid map" (except upon certain specified blocks), "any building other than a building or buildings to be used or occupied, or for the purpose of being used or occupied, as a private dwelling house or habitation." I shall consider this covenant, mindful of the primary rules of interpretation stated by Werner, J., in Kitching v. Brown, 180 N. Y. 414, 73 N. E. 241, 70 L. R. A. 742.

Each party owns lands in a large tract of rural land that was subjected to a building scheme. That scheme contemplated development of the tract for detached dwelling houses. Pursuant to such scheme, the tract was divided by streets into blocks, which were subdivided into lots, and the map thereof made and filed was designated "Map of Massapequa Villa Lots." From 1890 to 1893, the owners made a number of deeds conveying nearly 50 lots, and later an additional number of deeds conveying as many more. Thereafter a part of the land was sold to an improvement company, which in turn sold 24 lots, and later on the remaining lots unsold were conveyed to a land and title company, which likewise made sales and executed deeds thereof. All of these various deeds contained the covenants in question, save that in the printed deed of conveyance from the title company to this defendant the covenants were erased before execution. There now stands upon this tract a large hotel, a number of shops grouped about its railway station, and about 45 private dwellings.

In a tract designed and developed primarily for private dwellings, restrictions against the keeping of hotels, inns, and other public places, or of places for trade or for business, make, of course, for that purpose. That such was the purpose of this covenant is indicated, also, by the fact that certain parts of the tract are freed from these restrictions, so that the places last mentioned could be congregated. The defendant Pennell, Sr., moved his building onto his land, which was subject to the covenant, put another story upon the building, and, in his own words, made "a first-class hotel of it." It is now occupied and used for that purpose by the other defendant.

[1] I think that the words of the covenant restrict this land to private dwellings. To give to the word "habitation," as used in the covenant, its generic meaning as "a place of abode," is to find in one

sentence a restriction to private dwelling houses instantly broadened so as to include any structure that was occupied for residential purposes in distinction only from occupancy for business or for trade. Not only this, but the limitation to private dwelling houses would be meaningless, inasmuch as such a house is a habitation. *Private* dwelling houses do not include an inn or a hotel. Skillman v. Smatheurst, 57 N. J. Eq. 1–4, 40 Atl. 855; Gannett v. Albree, 103 Mass. 372. And the chamber of a guest at an inn is not his dwelling house. Rodgers v. People, 86 N. Y. 360, 40 Am. Rep. 548. See, also, Kalb v. Mayer, 150 N. Y. Supp. 94, decided November 27, 1914.

The learned counsel for the defendants cites Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341, in which it was held that an apartment house did not violate a covenant for a family residence, in that more than one family resided in the former; but there is no analogy, unless we hold that an inn, although many reside therein, is still a private dwelling house. I think that the word "habitation," as employed in the covenant, is synonymous with the other words of the sentence, "private dwelling house." It is properly used as a dwelling house (Bouvier; Nowlin's Adm'r v. Scott, 10 Grat. 64; Webster's Dict.; Standard Dict.; Stormonth's Dict.), and there is no reason why it cannot aptly describe a dwelling house that is private. If it be urged that this construction makes the words "or habitation" superfluous, I answer that it may be so. But tautology is common, even in legal documents, and a multiplicity of words neither requires nor justifies that different meanings must be found for them.

[2] The plaintiff prays that the defendants be enjoined from using the premises for carrying on the hotel business. But the learned court found that so much of the covenant as provides that there shall not be erected upon the defendant's premises any building other than a building or buildings to be used or occupied, or for the purpose of being used or occupied, as a private dwelling or habitation, is a structural covenant, and that the building or habitation erected by the defendant upon his premises does not violate that part of the covenant. I cannot say upon this record whether the structure itself, as to its exterior, violates the covenant, because I have no description thereof, save its dimensions, which are much smaller than those of many private dwellings. But I think that the sole object of the covenant was not to prevent an exterior hotel structure; in other words, that, despite the covenant, an inn or a hotel might be kept in a structure that appeared externally to be a private dwelling house. Objections to structures in cities may naturally be more substantial than those to structures in ruralities, and there appears no reason to suppose that the sole scope of this covenant was, so to speak, to external architecture. The restriction is not against the building, but against a building "to be used or occupied or for the purpose of being used or occupied." We must construe the words "with reference to what is the apparent object" of the covenant. Kitching v. Brown, supra; Rolls v. Miller, 53 L. J. Ch. Div. 652.

Not only did the defendant Pennell, Sr., testify that he had made structurally out of the building a "first-class hotel," but he also testi-

fied that it has 24 bedrooms, 2 dining rooms, and his son testifies that he sells liquors "over the bar." It also appeared by these witnesses that the main business is to furnish board and lodging, and that they conduct a regular hotel business. Therefore I am of opinion that there should be injunctive relief within the authority of Levy v. Schreyer, 177 N. Y. 293–295, 69 N. E. 598.

[3] I cannot say that the plaintiff should be denied relief, in that there appears to be no other complaint, or at least there is proof that many others countenance this inn. Even considering the expression in Batchelor v. Hinkle, 210 N. Y. 251, 104 N. E. 629, there is no proof in this case that "all the interested persons, or the most of them," are willing, or, indeed, that any of them is willing, to waive the enforcement of the covenant. By "interested persons" I mean property owners of a similar status to that of the plaintiff.

Doubtless the judgment works hardship upon the defendant. But he knew of the covenant, or at least was chargeable with knowledge thereof, and the plaintiff warned him of it, and of her purpose to enforce it, before he moved his building onto the land. Before he did so, he exacted from his grantor an indemnity bond against consequences. In fine, he had full warning of the possible consequences, and took the risk only after insuring himself against it. It was a conscious invasion, not an innocent occupancy.

There has been no change in the character of the neighborhood that brings this case within the rule of Trustees v. Lynch, 70 N. Y. 440, 26 Am. Rep. 615.

The twenty-fifth finding, in so far as it finds that the covenant is not one against occupation, is disapproved, and in place of that part of the finding it is found that the covenant is violated, and in conformity thereto the judgment must be amended, so as to restrain the defendants from using the building, or permitting it to be used, for any purpose other than a private dwelling, and, as so modified, the judgment should be affirmed, with costs of this appeal to the plaintiff appellant. All concur.