GALLON v. HUSSAR et al.

(Supreme Court, Appellate Division, Second Department. May 5, 1916.)

1. COVENANTS ⊚103(1)—RESTRICTIONS AS TO USE—"OCCUPATION BY MORE THAN TWO FAMILIES."

Taking boarders by a private family is not a violation of a restriction in a deed that a dwelling shall not be occupied by more than two families.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. ⊚103(1).]

2. COVENANTS ⊚103(1)—RESTRICTIONS AS TO USE OF PROPERTY—NUISANCE.

Taking boarders by a private family is not a violation of a restriction against any noxious, noisy or objectionable business, though the boarders are allowed to be noisy.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. ⊚103(1).]

3. COVENANTS ⊚103(1)—RESTRICTIONS AS TO USE OF PROPERTY—NUISANCE.

The mere keeping of a general store is not a violation of a restriction against any dangerous noxious, noisy, or objectionable business.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §·169; Dec. Dig. ⊚103(1).]

4. COVENANTS ⊚103(2)—RESTRICTIONS AS TO USE OF PROPERTY—OCCUPATION AS STORE.

Covenants, restricting building to "substantial dwellings" to be occupied by not more than two families, and no store to be built, in effect restrict against the conduct of a store in one of the dwelling houses erected, although the word "private" is not used in these restrictions.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. ⊚103(2).]

---

⊚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COVENANTS ⊚�longrightarrow108(1)—RESTRICTIONS AS TO USE OF PROPERTY—ESTOPPEL TO ENFORCE.

One violating a building line restriction is not entitled to equitable relief against neighbors for violating it.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 175, 179, 182–185; Dec. Dig. ⊚�longrightarrow108(1).]

6. COVENANTS ⊚�longrightarrow137—BREACH—PERSONS LIABLE.

In an action for damages against several neighbors for breach by each defendant of one or more restrictive covenants in uniform deeds, a judgment for damages against all the defendants jointly and severally is erroneous, since the rule as to joint tort-feasors is not applicable to breach of covenant.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 271; Dec. Dig. ⊚�longrightarrow137.]

7. INJUNCTION ⊚�longrightarrow62(1)—CONTRACTS—USE OF PREMISES—SUSPENSION OF INJUNCTION.

Where the construction of large public works has changed the character of a restricted neighborhood, an injunction against violation of restrictions as to use of property for stores, etc., will be suspended until the completion of the works.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 124, 125, 129; Dec. Dig. ⊚�longrightarrow62(1).]

8. COVENANTS ⊚�longrightarrow108(1)—BREACH—DAMAGES—RESTRICTIONS.

Where the construction of large public works has changed the character of a restricted neighborhood, no damages should be allowed for breaches of restrictive covenants as to using premises for stores, etc., diminishing the rental value of plaintiff's property while the work is going on.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 175, 179, 182–185; Dec. Dig. ⊚�longrightarrow108(1).]

Thomas, J., dissenting in part.

Cross-Appeals from Special Term for Trials, Westchester County.

Action by Fleurette B. Gallon against Charles Hussar and others. From the judgment both parties appeal. Reversed, and new trial granted.

Argued before THOMAS, CARR, STAPLETON, MILLS, and PUTNAM, JJ.

Clinton T. Taylor, of White Plains, for plaintiff.
Eben H. P. Squire, of White Plains, for defendants.

MILLS, J. These are cross-appeals by all parties from a judgment in an action in equity entered in Westchester county April 20, 1915, upon a decision rendered at the Westchester Special Term for Trials. While the decision and judgment were generally in favor of the plaintiff, yet the plaintiff has appealed from so much thereof as fixed the amount of incidental damages allowed, and from the part thereof which suspended for a certain period and upon certain terms the operation of the injunction granted. The defendants appealed from the entire judgment.

The general locality involved is well known, being that of the new Kensico reservoir, which the city of New York is constructing some few miles north of White Plains. The construction includes a very large dam in the neighborhood of the locality involved herein, and is

to result in an immense reservoir for the storage of water to be brought principally from the new Catskill source of supply. The action was brought by plaintiff, the owner of a certain lot in a restricted tract known as "Kensico Manor," situated some three or four miles north of White Plains and mainly on the east side of the Harlem Railroad, upon which lot she has erected two dwelling houses, in one of which she resides. The object of the action is to restrain the defendants, owners of other lots in the tract, from violating certain of the restrictions, and incidentally to recover damages to plaintiff's property caused by defendants' past such violations. The complaint makes some 10 different owners of different lots parties defendant, charging some with the violation of certain restrictions and others with the violation of others. The tract was first laid out and mapped into building lots by the Kensico Development Company as early as 1892. It contained about 900 lots, mostly only 25 feet wide each, and several streets as designated upon the map then filed. See Plaintiff's Exhibit 4. In 1910 New York City took, by condemnation proceedings, approximately one-quarter of the tract for the said Kensico reservoir now being constructed by its contractor, and including very much other territory. See Plaintiff's Exhibit 17. Up to that time very few of the lots, not exceeding 12 to 20, had been built upon. In general the streets were only marked out, very little grading and practically no work having been done upon them. Indeed it is quite apparent that the development had been practically a failure up to the time of the taking by the city.

The development company, in its conveyances of lots out of the tract, uniformly inserted in its deeds, including those under which all parties to this action hold, certain restrictions, which may be summarized and abstracted thus: (a) Against any dangerous, noxious, noisy or objectionable business, trade, manufactory, profession or calling; (b) against the manufacture, sale, or storage of alcoholic liquor, wines, ale, beer or cider; (c) that all dwellings must be set back at least 20 feet from the street on which they front; (d) that no buildings other than substantial dwellings, to cost not less than $1,200, and the necessary outbuildings, shall be erected; (e) that no dwelling shall be occupied by more than two families; and (f) that no store, factory, or place of business whatever shall be built upon said premises or any part thereof.

The decision finds violations by the defendants as follows, viz.: (a) The 20-foot setback restriction by the defendants Hussar, Thomas J. Miggins, Coombs, and Di Scipio. (b) The business use (principally stores), by defendants Charles Hussar, Frazer, Thomas J. Miggins, Coombs, Di Scipio and Lo Bue. (c) The sale of beer, by defendants Charles Hussar, Sweeney, Frazer, Coombs, Di Scipio, Lo Bue, Versen, and Fisher. (Note.—It would seem as though this particular violation was nearly universal.) (d) No more than two families in one dwelling house, by defendants Charles Hussar, Sweeney, Di Scipio, Lo Bue, and Fisher. (e) Taking boarders, if that be a violation as the learned trial court held, by defendants Charles Hussar, Miggins, Di Scipio, Sweeney, Versen, and Fisher. And (f) buildings costing less than $1,200, by defendants Frazer and Thomas J. Miggins.

So far as the doing of the acts so found is concerned, the very voluminous record appears to warrant in general the findings as made;

and this much does not appear to be seriously disputed by defendants' counsel, except that he claims that the evidence as to the sale of beer upon some of the premises is insufficient; but I think that the evidence indicates that the sale of beer is practically a universal occupation in the locality.

As to the meaning of the restrictions, the learned counsel for the defendants presents two contentions, viz.: (a) That only dangerous, noxious, noisy, or objectionable business is prohibited by the restrictions, and that they do not prohibit the conduct of an ordinary store; and (b) that taking boarders in a dwelling house is not prohibited.

[1, 2] Upon what theory the taking of boarders in and by a private family, in their dwelling house, can be deemed to be violation of the restrictions specified, as the trial court evidently has decided, I do not understand. The finding that such business, as conducted by the defendants, is a noxious, noisy, and objectionable business is a mere conclusion, unsupported by any specific facts found. In practically every suburb of New York City, such as Mt. Vernon, New Rochelle, or White Plains, in which nearly all of the newer sections have quite as stringent restrictions as these, the taking of boarders in private houses in such sections has been carried on for years, without any question of its violating such a restriction having been even raised. The only authority cited by plaintiff's counsel, which appears to be at all pertinent, is the recent case of Kalb v. Mayer (2d Dept.) 164 App. Div. 577, 150 N. Y. Supp. 94. In that case the restriction was expressly against use for a "boarding house," and to use for the purposes of a "private dwelling house." Even then the opinion, written by Mr. Justice Thomas, pertinently said:

"I do not mean to suggest that the word 'family' in its broad sense may not include persons boarding or lodging in the house, but I consider that the definition cannot be widened to include several distinct families, combined only for economic purposes. But if defendant elects to term his co-operating families 'boarders' or 'lodgers,' he offends, I think, the restriction against a boarding house." 164 App. Div. 579, 150 N. Y. Supp. 95.

The counsel for the plaintiff contends that, even if the keeping of boarders may be ordinarily so conducted as not to annoy a residential neighborhood, and if, when so conducted by a private family, such a business would not violate these restrictions, yet such business, even when conducted by a private family in a dwelling house, would violate the restrictions if it was conducted in a noisy manner, e. g., if the boarders were suffered to congregate about the premises playing games and being noisy generally. It does not seem to me that such a construction is practicable or permissible. If so, then the conduct of a private dwelling by noisy actions of the occupying family might be deemed a violation of these restrictions. They are not designed to secure any such result, and such conduct must be suppressed by resort to other proceedings than an action to enforce such restrictions. Neither of the cases cited by the counsel for the appellant in support of this contention seems to me to sustain it. Thus in Dieterlen v. Miller (1st Dept.), 114 App. Div. 40, 99 N. Y. Supp. 699, the decision was merely that some kinds of business, which were not nuisances at common law, might be forbidden by a restriction against "any nox-

ious, offensive, or dangerous trade or business"; and in Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182, the decision was merely that an undertaking establishment with a morgue was within the prohibition of such a restriction. Neither of those decisions cited by plaintiff's counsel indicates that the taking of boarders can be deemed a "noxious or noisy or objectionable business," even because some of the boarders do not act the part of gentlemen, or even that of law-abiding citizens. The decision herein that the keeping of boarders in a dwelling house upon one of these lots is a violation of the restrictions appears to me to be unwarranted.

As to the contention of defendants' counsel that the restrictions should not be construed so as to prevent the conduct of a general store in a dwelling house occupied by no more than two families, it is to be noted that the restrictions here are not to a "private dwelling," as in the Kalb Case, supra, but are to "substantial dwellings," not to be "occupied by more than two families." The restrictions are not, by their express terms, clear upon this point.

[3] It is plain, I think, that the mere keeping of a general store cannot be classed as the carrying on of a dangerous, noxious, noisy, or objectionable business. No case cited by plaintiff's counsel appears to me to warrant any such conclusion. The point decided in the Luhman Case, 81 Misc. Rep. 537, 142 N. Y. Supp. 860, affirmed 163 App. Div. 964, 148 N. Y. Supp. 1127, was merely that a railroad was a structure other than a private residence. In the Rowland Case, supra, it was held that the business of conducting an undertaking establishment with a morgue was a violation of the restriction prohibiting the carrying on of any business "injurious or offensive to the neighboring inhabitants," but I think that the reasoning of the opinion in that case indicates that the conduct of an ordinary store would not have been deemed prohibited by the restrictions there. The Dieterlen Case, supra, merely reasserts the doctrine of the Rowland Case. In the Simons Case, 132 App. Div. 719, 117 N. Y. Supp. 567, the restriction was expressly against a bakery, and that disposed of the case. The restrictions here, however, provide that "no store * * * whatever shall be built upon said premises or any part thereof," but there is no restriction that no store business shall be conducted upon the premises. The counsel for the defendants appears to contend that a restriction against building a store cannot be held to be a restriction against carrying on a store business in a dwelling house otherwise used for residential purposes. It was recently held by this court, Mr. Justice Putnam writing, that such restrictions are not to be enlarged or extended by judicial construction; and that therefore a restriction against a garage upon premises which are to be used only for residential purposes is not violated by a lean-to structure at one side of the dwelling, in which the owner keeps his automobile. Sullivan v. Sprung (2d Dept.) 170 App. Div. 237, 156 N. Y. Supp. 332, No. 791 Adv. Sheets.

By parity of reasoning it would seem that the conduct in a part of a dwelling house of such an inoffensive business as a store, law office, physician's office, or the like would not violate a restriction against "dangerous, noxious, or noisy or objectionable business." The respective covenants here do not contain, as they did in the Sullivan Case,

supra, any express declaration that the buildings shall be "private houses," as in Barnett v. Vaughan Institute, 134 App. Div. 921, 119 N. Y. Supp. 45, affirmed 134 App. Div. 921, 119 N. Y. Supp. 45, and 197 N. Y. 541, 91 N. E. 1109, wherein Mr. Justice Thomas, writing at Special Term (his opinion being adopted by this court), held that a covenant that the buildings shall be "first-class private houses" was violated by using such a house as a private sanitarium for the treatment of many people for nervous diseases. Apparently in that case the use of the word "private" was regarded as controlling. Even so, I do not think that such covenant would be construed so as to prevent a physician taking a few patients in his own house for treatment. In the case of Goodhue v. Pennell (2d Dept.) 164 App. Div. 821, 150 N. Y. Supp. 435, this court, Mr. Presiding Justice Jenks writing, regarded the word "private" as controlling, and therefore as forbidding a hotel business, even in a building constructed as a dwelling house. Also in that case the covenant was against the "erection," and not in terms against the use; and yet this court held that the restriction must be construed, not only to prevent the erection of buildings in form different from that of a private dwelling house, but so as to prevent the use of the buildings for purposes other than private dwelling houses.

[4] It would seem therefore that, aside from the first sentence of these restrictions, which prohibits any dangerous, noxious, or noisy or objectionable business, the covenants which restrict the use to "substantial dwellings," to be occupied by not more than two families, and no store to be built, in effect restrict against the conduct of a store in one of the dwelling houses. Therefore, while the word "private" is not used in these restrictions, I think that they were properly construed by the learned court at Special Term as prohibiting the conduct of any store in any of the dwelling houses, although I do not think that the first sentence of the restriction, which prohibits any dangerous, noxious, noisy, or objectionable business, standing by itself, should be so construed.

As to the 20-foot setback restriction, defendants' counsel claims that the undisputed evidence shows that plaintiff herself has substantially violated that restriction by erecting one of her houses within about 10 feet of the side of Hillandale avenue, upon which it fronts, and a privy within 22 feet, and a chicken coop within 70 feet, when the restrictions require such outbuildings to be 60 feet back. See Plaintiff's Exhibit 19 and Defendants' Exhibit A.

There appears to me to be no dispute about the facts as to those locations with reference to the street lines as laid down upon the map by which all parties took their deeds. It appears that that street has not been worked, but that merely a dirt road some 18 feet wide has been used within its limits; whereas the street is 50 feet wide by the map. The line of the dirt road is shown by Plaintiff's Exhibit 19. The counsel for the plaintiff contends that this actual opening of the dirt road constituted a change in the location of Hillandale avenue; but the evidence indicates nothing more than that, in advance of the working of the street to its full width, such narrow roadway was opened by actual use. Indeed, that appears to be the condition of the streets

in the tract generally, except Broadway, as the photograph exhib.ts indicate.

[5] The plaintiff, having thus herself violated the setback restriction, is not entitled to equitable relief against her neighbors for violating the same. Therefore finding of fact 9, to the effect that plaintiff has not violated the restrictions, is contrary to the evidence so far as the setback restriction is concerned, as the ·evidence clearly establishes that she has substantially violated that and is still doing so.

[6] The decision finds that all the violations of the restrictions by said defendants have caused the rental value of plaintiff's premises to be decreased $10 a month from the 1st day of August, 1910, and that the defendants are jointly and severally liable to the plaintiff for the amount of such diminution up to the time of the entry of the judgment. Judgment, therefore, was entered in favor of the plaintiff for the aggregate such amount, with interest thereon up to the date of the entry of judgment, amounting in all to the sum of $629.61. Probably the damages were allowed against all the defendants jointly and severally upon the theory that, all being quasi wrongdoers, each was liable for the entire wrong; it being impossible to apportion to each one the part of the general resulting damages due to his wrongful act.

It seems clear that such is not the correct rule of damages in a case like this, where the gravamen of the action is the breach by each defendant of one or more of the restrictive covenants. The learned counsel have failed to cite any authority upon the question. Obviously the general rule of the joint and several liability of tort-feasors, whose several wrongful acts have contributed to the general harmful result, is not applicable because this is a case of breach of covenant. It is well established even that in the case of wrongful acts by different persons, not based upon negligence, or perpetrated with a common design, such as the pollution by each of the waters of a stream, an action in equity for an injunction, and incidentally for damages, may be brought against all such persons, but that in such action each one can be held liable only for the damages caused by his wrongful act; that is, his own pollution of the stream. Chipman v. Palmer, 77 N. Y. 51, 33 Am. Rep. 566; Warren v. Parkhurst (3d Dept.) 105 App. Div. 239, 93 N. Y. Supp. 1009, affirmed 186 N. Y. 45, 78 N. E. 579, 6 L. R. A. (N. S.) 1149, 9 Ann. Cas. 51.

In case of a trespass by cattle of several owners, each owner is liable, not for all the damage done, but only for that done by his own cattle; and, if it be impossible to prove the part of the general damage which the cattle of each owner did, it may be presumed that all the cattle did equal damage and the damages assessed against the several owners in severalty upon that basis. Wood v. Snider, 187 N. Y. 28, 79 N. E. 858, 12 L. R. A. (N. S.) 912.

It may well be that in such a case as this the violation proven against a certain defendant by itself would very little lessen the rental value of plaintiff's premises; whereas the violation proven against another defendant, for instance, by maintaining a saloon, might very seriously lessen such rental value. There would seem to be little right or equity in holding the former liable for the damage done by both violations. I conclude, therefore, that the rule of damage adopted by the learned

Trial Court was erroneous; but whether or not that be so, it would seem that the amount of the total damages to plaintiff's property must have been increased in the judgment of the trial court by the decision that the keeping of boarders was a violation, and that the plaintiff was in a position to recover damages for injury to her property caused by the violation by defendants of the setback restriction. I perceive no method of ascertaining from the decision or the evidence the amount of damages, if any, to the rental value of plaintiff's premises from the violations of the restrictions against: (a) Liquor and beer; (b) occupation by more than two families; (c) dwellings costing less than $1,-200 each; and (d) business such as stores and barber shops, or the amount of damages caused by the such violations by each defendant. It would seem therefore that it is impracticable to attempt to modify the decision and judgment and to affirm the latter as modified.

[7, 8] Moreover, if since 1910, when the city began its reservoir work, the rental value of plaintiff's premises as residential property, used in accordance with the restrictions, has been substantially diminished by reason of the conditions in the locality, it does not seem to be well established by the record that any substantial part of such diminution in rental value has been due to the violations by these defendants. The conditions of boarding houses for all sorts of laborers, stables, hospital, pesthouse, commissary (i. e., store, restaurant, and saloon combined), incident to the city's work, all for the accommodation of a thousand laborers of all races and kinds, largely situated upon the part of this very Kensico Manor tract, which part was condemned and taken by the city, all combined to present such a disagreeable neighborhood to a strictly villa residential locality that it is a matter of pure speculation to determine that the depreciation in the rental value of plaintiff's premises would not have been just as great had none of defendants' violations existed. It is manifest that the reservoir work, with its incidentals, has practically put the Kensico Manor tract out of use as a good class of residences, and will continue to do so as long as that work is going on. The learned Trial Justice recognized this, and therefore, and wisely as I think, upon certain terms suspended the operation of the injunctions granted until the completion of the city's work. I think that he might well have gone further and allowed no substantial damages against the defendants until that time. The situation of the locality due to the city's work is most remarkable, constituting, aside from any action of the defendants, a complete temporary change of character. Very likely, if such change were permanent, it would, in equity, be deemed sufficient to render these restrictions nonenforceable as being practically obsolete. It does not seem to me at all equitable to hold these defendants liable to the plaintiff for the damages which have resulted to the rental value of her premises from that general change in the character of the locality. Indeed, it seems to me most unreasonable to make these defendants pay this plaintiff for the diminution in the rental value of her premises while the city's work is going on. The doings of these defendants evidently constituted a mere drop in the bucket compared with the disagreeableness caused by the city's work. No doubt the situation in this locality resulting from that work is very much the same as the result to the

neighborhood of the Hillview reservoir in Yonkers during its construction by New York City. There the commissioners allowed a landowner, part of whose tract had been taken, $75,000 for damages to the rest of the tract during the period of construction. Upon motion at Special Term, to confirm, it was held that the city was not liable for such damages for temporary inconvenience while the work was going on. See In re Board of Water Supply of City of New York, 73 Misc. Rep. 231, at 235, 237, 130 N. Y. Supp. 997. The city appealed upon another point; but this court affirmed without opinion (In re Simmons, 151 App. Div. 885, 135 N. Y. Supp. 1143); and the Court of Appeals likewise (206 N. Y. 680, 99 N. E. 1118).

I recommend, therefore, that the judgment appealed from be reversed and a new trial granted, costs to the defendants appellants to abide the event. All concur; THOMAS, J., except in the suggestion that there could be a suspension of the injunction.