ANGIE M. BOOTH and MARY T. SUTPHEN, Respondents, *v.* WILLIAM H. WELLINGTON KNIPE and WATERSIDE LAND CORPORATION, Appellants.

First Department, June 8, 1917.

Real property — covenant to erect building construed — when covenant does not run with land and is not enforcible by other grantees — use of residence by physician as private maternity hospital.

A covenant whereby a grantee, for himself, his heirs and assigns, agreed with the grantor that within two years from the date of the deed he would cause to be erected and fully completed upon the lands a first class building adapted for, and which shall be used only as, a private residence for one family, and which shall conform to certain plans, is not a restrictive covenant running with the land, and hence is not enforcible by another grantee holding under a deed from the same grantor containing a similar covenant. Such covenant is a personal agreement with the grantor to erect a building for a particular use within a specified period, and did not continue binding upon subsequent purchasers until the erection of the building.

But a grantee of lands on which a building had been erected in compliance with said covenant has a standing in court to enforce the covenant, if binding, against another grantee, although she owns other lands purchased from the same grantor on which such building has not been erected as required by the covenant.

A restrictive agreement or covenant with respect to the use of demised premises is to be construed most favorably to the grantee.

In any event, a case for the equitable enforcement of the aforesaid covenant has not been made out where a building in compliance therewith was actually erected on the lands now held by the defendant, for there was

no limitation of time during which the building was to be used as a private residence, and hence the building might have been demolished and another erected and used for other purposes.

Moreover, there is no violation of the covenant where the defendant, a physician, uses the building as a private residence and in addition merely lodges and treats maternity patients, and indicates such professional business by an inconspicuous sign.

APPEAL by the defendants, William H. Wellington Knipe and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of March, 1917, continuing an injunction *pendente lite* restraining the alleged violation of a restrictive covenant.

*James A. Farrell* [*Louis Bevier, Jr.,* with him on the brief], for the appellant Knipe.

*George L. Ingraham,* for the appellant Waterside Land Corporation.

*Theodore W. Morris, Jr.,* for the respondent Sutphen.

*Robert F. Greacen,* for the respondent Booth.

LAUGHLIN, J.:

On the 26th day of June, 1896, one Sutphen, who then owned the entire frontage on Riverside Drive between Seventy-second and Seventy-third streets in the city of New York, filed a subdivision map thereof in the office of the register of the county of New York. On the twenty-ninth day of the same month he conveyed lot No. 21 shown on the subdivision map to one Kleeburg. The deed contained the following: " But this conveyance is made by the said parties of the first part to the said party of the second part, on the agreement that he, the said party of the second part, his heirs and assigns, shall within two years from the date hereof cause to be erected and fully completed upon said lot, a first-class building, adapted for and which shall be used only as a private residence, for one family, and which shall conform to the plans made or being made by P. H. Gilbert, architect, No. 18 Broadway, New York City, for the whole front between Seventy-second and Seventy-third streets, on Riverside Drive, and said conveyance is made and said lot is sold upon that

condition." The grantee erected on the premises a dwelling house in conformity with the agreement contained in the deed, but whether within the time specified does not appear. He thereafter occupied the house as a family residence, and on the 16th of October, 1907, conveyed to a grantee by the same name, who on the 4th of January, 1908, deeded the premises to one Guggenheim, during whose ownership it was used for a period by a tenant as a private boarding house. On the 30th of June, 1914, Guggenheim conveyed to the defendant company, and it leased the premises to the defendant Knipe for the term of five years from the 15th of August, 1915. The lease contained the provision that the premises should be used by Knipe " as a sanatorium, and not otherwise." Knipe was a physician and he took possession of the house and used it as his residence and as a private hospital or sanatorium, and received and administered therein to women in child birth the treatment known as " twilight sleep," having from one to three patients at a time; but made no architectural or external changes in the building, and there was no external evidence of its use other than the doctor's small professional sign at the entrance. This use of the premises has been enjoined as violative of the agreement or condition upon which the premises were conveyed by Sutphen. On the 18th of January, 1897, Sutphen conveyed lot 25, which was part of the premises plotted but fronted only on Seventy-third street in the rear of the lots fronting on Riverside Drive, with a like restrictive covenant; and on the 3d of May, 1899, he conveyed lot 19, the second to the north of the premises in question, with a like restriction. Thereafter and on the 17th of November, 1900, Sutphen died leaving a last will and testament giving a power of sale to his executors. On the 5th of May, 1906, his executors conveyed lot 22, adjoining lot 21 on the north, and the deed contained similar provisions. On the 20th of October, 1909, the plaintiff Booth acquired title to said lot 22. A dwelling house has been erected on that lot in conformity with the restrictive covenant, which she occupies as a private residence, but it does not appear when or by whom the house was erected. She alleges also that she is the owner of lot 20 which adjoins the premises in question on the south, and lots 23 and 24, which lie to

the north of her residence, all of which were conveyed by Sutphen's executors under like restrictions, but those three lots are still vacant. The plaintiff Sutphen owns lot 18 which fronts on the curve from Seventy-second street into Riverside Drive and is the third lot south of lot 21, and that was conveyed with similar restrictions, and upon it has been erected a house in accordance with the agreement, but the date of erection does not appear, and it has been and is used as a private dwelling house. There was erected on lot 19 a house which accords with the agreement and it has been and still is used as a private residence.

The plaintiffs claim that the agreement contained in the conveyance from the owner who plotted the premises constitutes a restrictive covenant with respect to the *use* of the *first* building erected which runs with the land, and that the use of the dwelling house on lot 21 is a violation thereof which entitles them to injunctive relief. It is unnecessary to consider the claim that the failure of the plaintiff Booth to build on the three vacant lots owned by her is a bar to any relief on her part, for that would not bar relief to the plaintiff Sutphen upon whose lot a private residence has been erected and is used as such. The questions presented for decision by the appeal, therefore, are whether this was a restrictive covenant running with the land; and if so whether the use of the house by the defendant Knipe constitutes a violation thereof. It is a general rule that a restrictive agreement or covenant with respect to the use of demised premises is to be construed most favorably to the grantee. (*Sullivan* v. *Sprung,* 170 App. Div. 237; *Lewis* v. *Ely,* 100 id. 252; *Clark* v. *Devoe,* 124 N. Y. 120; *Blackman* v. *Striker,* 142 id. 555; *Mitchell* v. *Reid,* 192 id. 263; *Moller* v. *Presbyterian Hospital,* 65 App. Div. 134; *Sonn* v. *Heilberg,* 38 id. 515; *Kitching* v. *Brown,* 180 N. Y. 414, 427.) The learned counsel for the appellants contend that this should not be construed as a restrictive covenant running with the land, but as a mere agreement on the part of the grantee and perhaps his grantees within two years with respect to the erection and use of the building in the first instance, which was fully satisfied by the erection of a dwelling house and its use strictly as a private residence for some years, long before the defendant company acquired

title and leased the premises to the defendant Knipe. They rely principally upon *Miller* v. *Clary* (210 N. Y. 127), holding that a covenant to construct and maintain a shaft does not run with the land and is not enforcible against the owner to whom the servient estate was subsequently conveyed; and upon *Hurley* v. *Brown* (44 App. Div. 480), which involved a covenant or agreement by a grantee to build a two-story dwelling of a fixed value with an express agreement that relief might be had by injunction for a breach thereof, and in which that was held to be an affirmative covenant not enforcible against a subsequent owner, and that in any event it was complied with by the erection of the building in the first instance since there was no express restriction with respect to the *use* of the building. The court in that case also expressed the opinion that the building, after having been erected in accordance with the covenant or agreement, might have been altered or torn down and a new building erected; and that even if the covenant ran with the land it was enforcible only within a reasonable time; and that the violation, if any, occurred before the defendant acquired title, on the theory that a reasonable time had elapsed, and that, therefore, the breach, if any, was by defendant's grantor. Appellants also rely upon *Kurtz* v. *Potter* (44 App. Div. 262; affd., 167 N. Y. 586), which involved a restrictive covenant to the effect that the first buildings erected within twenty years should be private dwellings planned and adapted for the residence of families or for churches, and in which it was held that this was a restriction with respect to the character of the building to be erected but not with respect to the *use* thereof.

As already stated it does not appear when the house on lot 21, owned by the defendant company and occupied by the defendant Knipe, was erected; and it is, therefore, contended that it has not been shown that it was erected pursuant to the agreement. There is much force in the contention that if no house had been erected within the agreed period, a subsequent purchaser could not have been compelled to build and would not have been limited by the agreement. It will be observed that there was no agreement obligating the grantee to maintain the building for any length of time and, therefore, he was at liberty to demolish it immediately

after having erected and used it in accordance with the agreement, and would then have been unrestricted by this covenant with respect to the character of the building to be subsequently erected or the use to be made thereof. On that theory it is argued that if the use made of the building be a violation of the restrictive agreement or covenant it is not a case for the interposition of a court of equity since the defendants might by demolishing the building and erecting another lawfully make the same use of the premises that they are now making. This court recently in *Reed* v. *Sobel,* decided on the 13th day of April, 1917 (177 App. Div. 532), held that a covenant that the first buildings to be erected on premises conveyed should be " private dwellings constructed for the use of one family only," did not restrict the use, and that without front exterior architectural changes the building could be lawfully changed into apartments; and in *Baumert* v. *Malkin* (178 App. Div. 913) this court held that a covenant in a conveyance providing that the first buildings should be " first-class private dwellings designed for the use of one family only " was not violated by the use of the dwelling as a studio. In *Lewis* v. *Ely* (*supra*) this court held that a restriction with respect to the erection of buildings permitting the erection of private dwellings only, although declared to run with the land, did not restrict the *use.* In the case at bar counsel for the respondents rely upon the fact that this restrictive covenant was not limited to the character of the building to be erected but expressly relates to the *use* as well; and reliance is placed principally upon *Barnett* v. *Vaughan Institute* (119 N. Y. Supp. 45), affirmed on the opinion of Mr. Justice Thomas at Special Term (134 App. Div. 921) and affirmed by the Court of Appeals without opinion (197 N. Y. 541). In that case the covenants were " that the buildings erected  *  *  *  shall be first-class private houses and shall stand back at least twenty feet from the street line of Park Place. This covenant is a real covenant running with the land and binding  *  *  *  until the 1st day of December, 1912  *  *  *." There, as will be seen, it was expressly agreed that the covenant ran with the land, and it was held that it was violated by the use of the house thereafter erected thereon as a private sanatorium and by moving another house on the same lot and using it

for like purposes, the two houses together accommodating forty-one patients. In *Goodhue* v. *Pennell* (164 App. Div. 821) it was held that a restriction against the erection of a building other than one *to be used* as a private dwelling restricted the *use*. It will be observed that the decisions apparently are not in harmony with respect to the construction of restrictive covenants; but it is not necessary on this appeal to attempt to reconcile them or to say which should be followed if they are in conflict on the adjudications on the facts necessarily presented.

Counsel for the respondents contend that it is to be inferred that the original owner formed a general scheme for the improvement and development of the property and that, therefore, this agreement or covenant should not be construed as merely intended for his protection in selling the other lots and limiting the character of the buildings first to be erected, but as a general restriction of the use of the dwelling houses to be erected, for the benefit of himself and his grantees, in accordance with the rule stated in *Korn* v. *Campbell* (192 N. Y. 490, 495) and in *Silberman* v. *Uhrlaub* (116 App. Div. 869). If it was intended to restrict the use of the houses for the benefit not merely of the grantor but of his grantees then the agreement was not, I think, so drawn as to be effective for that purpose. In form it is an agreement exacted of the grantee by the grantor as a condition of accepting the grant and it is not expressly made to run with the land. It is not a covenant against use but a personal agreement to erect for a particular use within a specified period. The provision that the lot was sold and grant made on the condition that such a house would be so erected indicates, I think, that the grantor intended to reserve the right to declare the grant forfeited for a violation or failure to perform the agreement.

I am of opinion, therefore, that this agreement should not be construed as a restrictive covenant running with the land, but merely as an agreement between the grantor and the grantee with respect to the character and use of the building to be erected and the time within which it was to be erected. It may have bound any purchaser within the two years but it did not continue binding on purchasers indefinitely until

First Department, June, 1917.          [Vol. 178.

the erection of the building. The defendants could not compel the plaintiff Booth to build now on her vacant lots and I think no one could. But if it were not susceptible of this construction I am of opinion that a case for equitable relief has not been made out. As already observed, there is here no limitation of the time during which the building shall be used as a private residence and, therefore, it might have been demolished and another building erected and used as this is now used. Furthermore, it is not at all clear that the use made of the building is a violation of the agreement. The defendant Knipe used the house as his private residence and for an office and for a limited number of his patients. So far as appears externally the building is a private residence and is occupied as such by the defendant Knipe. The only external indication that it is not used exclusively as a private residence is his inconspicuous professional sign. In *Gallon* v. *Hussar* (172 App. Div. 393) the Second Department, distinguishing *Barnett* v. *Vaughan Institute* (*supra*), decided by the same court, held that a similar covenant should not be so construed as to prevent a physician from taking a few patients into his own house for treatment or from taking boarders; and in *Smith* v. *Graham* (161 App. Div. 803), in an opinion adopted by the Court of Appeals (217 N. Y. 655), it was held by the Fourth Department that a covenant, which it was expressly agreed should run with the land, to erect only a dwelling, but reserving to the grantee the right to receive and care for medical and surgical patients, was no broader with respect to the reserved right to care for medical and surgical patients therein than would have existed without it, and that a dwelling so long as it is used as a dwelling " may be also used as a place for carrying on some kinds of business provided such business is of such character as to be no inconvenience to neighboring property holders."

I am of opinion, therefore, that the order should be reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.