EDITH R. NEILSON, Plaintiff, *v.* HIRAL REALTY CORPORATION. JOSEPHINE RALSTON, etc., and Others, Defendants.

Supreme Court, Special Term, Kings County, November 9, 1939.

*Maires & Maires* [*Thomas Maires* of counsel], for the plaintiff.

*Bachrach, Bachrach & Bisgyer,* for the defendants Hiral Realty Corporation and Josephine Ralston.

LEWIS, (HARRY E.), J. This is an action to restrain the defendants from using their premises, which adjoin the residence of the plaintiff, as a nursing or convalescent home in violation of a restrictive covenant contained in the deeds in the chain of title of both parties. The pertinent provision of the covenant provides that there shall not or will not be erected, permitted or allowed to be erected on any portion of the premises conveyed " any building other than a single private dwelling house."

Upon the trial it appeared that the defendant Ralston since January, 1938, has been in possession of the premises and has been conducting a nursing home thereon containing nineteen rooms which accommodate twenty-seven patients. She does not reside upon the premises. The patients, consisting of old or chronic patients or convalescents, are attended by nurses and remain several months or longer. Some are brought by stretchers through the front entrance. Some patients, due to their illnesses, moan and create other noises. Still others require hospitalization and are removed in ambulances accompanied by police cars. In 1938

twenty-four of the patients died upon the premises, requiring visits of morticians with hearses. In addition to these visible annoyances, there is the rattle of dishes emanating from a common kitchen located in the building which was formerly used as a private garage in the rear of the house, and which is now used to prepare three meals a day for approximately two dozen patients and their attendants. Disturbance is also created by the numerous visitors to the home on Sundays, who block plaintiff's driveway. This evidence conclusively establishes a violation of the restrictive covenant.

While the prohibition literally proscribes only *erection* of a building other than that specified, the object of the covenant includes the subsequent use as well as the original structural character of the premises. (*Goodhue* v. *Pennell*, 164 App. Div. 821; *Levy* v. *Schreyer*, 177 N. Y. 293; *Baumert* v. *Malkin*, 235 id. 115.) " A house intended for a private residence or home is not intended for a place for the temporary gathering of diseased persons for treatment." (*Barnett* v. *Vaughan Institute*, 119 N. Y. Supp. 45; affd., 134 App. Div. 921; affd., 197 N. Y. 541.) The test is whether the building still retains its general character as a private dwelling house (Cf. *Tonnelle* v. *Hayes*, 118 Misc. 339.) A nursing or convalescent home such as the one conducted by the defendant Ralston does not satisfy that test. (See *Booth* v. *Knipe*, 225 N. Y. 390.)

It is urged that the use of the premises has been authorized by the city authorities and that no objection has been made by any other person in the neighborhood, although there is an adjoining apartment house. Authorization by the city is granted merely upon compliance with certain formal regulations having no reference whatsoever to restrictive covenants enforcible by private parties; in no way does it affect the latter. Nor does failure on the part of others, similarly situated as the plaintiff, to object make the complaint of the plaintiff any the less tenable. (*Goodhue* v. *Pennell, supra.*)

Defendants' principal claim is that enforcement of the restriction would be inequitable because of a change in the neighborhood since the creation of the restrictive covenant in question. There was testimony that the neighborhood had been changed by the erection of large apartment houses along Ocean avenue, upon which the premises of both plaintiff and defendants front, and by the location of several stores on the corner of Church and Ocean avenues, two blocks from the premises in question. There was also proof that the house used by the defendants had only nominal salable value for residence purposes, but that the site was of some value for an apartment house.

The following cases relied upon by the defendants do not support their contention:

In *Trustees of Columbia College* v. *Thatcher* (87 N. Y. 311), in addition to an entire change in the character of the neighborhood from residential to business, an elevated structure had been constructed in front of the premises which made them undesirable for residential purposes. It was on the latter fact that the court relied, inasmuch as the encroachment of business in the area had been anticipated when the covenant was originally made. This situation does not obtain in the instant case.

In *McClure* v. *Leaycraft* (183 N. Y. 36) the neighborhood changed to one of apartment houses and the covenant sought to be enforced prohibited the building of such houses. That, of course, did not sanction the operation of nursing homes where the change of neighborhood has been from private dwellings to private dwellings and apartment houses.

In *Forstmann* v. *Joray Holding Co., Inc.* (244 N. Y. 22), the court stated, as an element in its decision, that since defendants' property was in a business district its value for residence purposes was relatively small and the property must remain idle unless utilized for business purposes. But the court added that erection of defendants' building at a place not adjacent to the premises of the plaintiffs and for a use " neither noisy nor offensive " would not make plaintiffs' premises less desirable for residence purposes. In addition, it appeared that the covenant by its terms would expire in a few years.

The change from purely private to tenement houses is not as radical as would be one from private residences to business. The location of the stores on the corner of Ocean and Church avenues indicates no real encroachment of business into the restricted area where plaintiff resides. Church avenue itself is a business street and by the local zoning ordinance stores may be erected for a hundred feet north or south of Ocean avenue. (See zoning map.) The current of business activity has not broken those bounds. " The mere encroachment of business up to the restricted territory, did not justify the denial of equitable relief." (*Pagenstecher* v. *Carlson*, 146 App. Div. 738.) Proof was offered of the previous use of the premises as a public restaurant and night club, then as medical offices for several physicians, and then as a maternity hospital. Use of the premises by several physicians in an inconspicuous manner would not violate the covenant here involved. The character of the occupancy is not changed by the practice of medicine. The defendants, however, have been engaged in a calling which exceeds that quiet and inconspicuous conduct of a

medical practice which was sanctioned by dictum in *Gallon* v. *Hussar* (172 App. Div. 393). Dicta in other cases which approve of the practice of medicine as non-violative of a covenant against the carrying on of business, either state that the medical profession is not " a business " (*Iselin* v. *Flynn*, 90 Misc. 164), or recognize that the conduct of the business must be " of such character as to be no inconvenience to neighboring property holders." (*Smith* v. *Graham*, 161 App. Div. 803, 809.)

The occupation as a restaurant was brief and at least for the greater portion of that period preceded plaintiff's ownership. The failure of plaintiff's predecessors to enforce the covenant against such violation does not relieve the defendants of their obligations under the covenant. (*Dexter* v. *Beard*, 7 N. Y. Supp. 11; 53 Hun, 638, affg. opinion of court below. See, also, *Zipp* v. *Barker*, 40 App. Div. 1; affd., 166 N. Y. 621.) It appears uncontrovertedly that plaintiff did make a demand in writing against the use of the premises for a maternity hospital.

Plaintiff, therefore, is entitled to an injunction unless other facts show an estoppel. Notwithstanding plaintiff's original objection, the aforementioned maternity hospital was continued in operation until defunct without legal action being taken by plaintiff. That, however, did not mislead the defendant Ralston. In January, 1938, before the commencement of her tenancy, she was informed that protest would be made against any use of the premises as a nursing home. That nothing further was done by plaintiff through 1938 does not bar plaintiff. Any expenditures by the defendant Ralston were made with knowledge of plaintiff's announced intention to " protest." Objection to defendant's use of the premises was again made by formal notice, before title was taken to the property in July, 1939. The burden was upon the defendant Ralston to establish that she was induced to proceed by plaintiff's silence. (*Andrews* v. *Cohen*, 221 N. Y. 148; *St. Vincent's Orphan Asylum* v. *Madison-Warren Corp.*, 225 App. Div. 379. See *McCain Realty Co.* v. *Aylesworth*, 128 Misc. 408.) It does not appear that plaintiff abandoned or intended to abandon the right to enforce the restriction. On the contrary, defendant had actual notice of plaintiff's intention and constructive notice furnished by the recorded covenant. The proof preponderatingly establishes a wanton disregard by the defendant Ralston of the covenant and plaintiff's protest.

Injunction restraining defendants from using their premises as a nursing or convalescent home granted.