## Stollsteimer et al. v. Morgan et al.

*George Maxman* and *James S. Clifford, Jr.*, for plaintiffs.

*William Kendall*, for defendants.

LEVINTHAL, J., February 9, 1940.—Plaintiffs seek an injunction to restrain defendants from altering and using their house for nonresidential purposes. The bill, filed by the original plaintiff, Marie Stollsteimer, alleges that the property in question is subject to a restrictive covenant forbidding the erection of any building other than a private dwelling house, and limiting the use of the premises to residential purposes only. Further averments in-

dicate that defendants, Dr. Morgan and his wife, are contemplating alterations in the basement of their home in order to provide offices wherein defendant physician intends to practice his profession. The prayer is for a preliminary and permanent injunction to restrain Dr. Morgan and his wife from proceeding with the proposed changes, and to restrain John H. Neeson, chief of the Bureau of Engineering and Surveys, from issuing a permit therefor.

The answer admits most of the facts alleged in the bill; sets out in detail the alterations planned; avers that defendants intend to use the premises as a home for themselves and their children; and denies that the structural changes and proposed use of the basement as professional offices constitute a violation of the restrictive covenant.

A preliminary hearing was held which, by agreement of counsel, was made final. Seven other property owners in the vicinity, whose premises are subject to the same restrictions, were permitted to intervene as parties plaintiff and have filed requests for findings of fact and conclusions of law.

The sole issue before the court is whether the proposed alterations and use of the premises in question constitute a violation of the restrictive covenant to which they are subject. . . .

### Discussion

Settled principles of law require covenants of this nature to be strictly construed and all reasonable doubts resolved in favor of the free and unrestricted use of the property: Binswanger v. Hyman, 271 Pa. 296 (1921). Strict construction does not, however, demand an interpretation that disregards the clearly-expressed intention of the parties to the deed.

We have here two separate and distinct limitations: One, prohibiting the erection of any physical structure other than a dwelling house; second, forbidding alterations to or the use of that structure for other than resi-

dential purposes. The reason for the dual covenant is obvious in view of those decisions holding that a single clause of the first type does not prevent a building, physically a dwelling house, from being used for business purposes: Stone et al. v. Pillsbury et al., 167 Mass. 332, 45 N. E. 768 (1897); Tonnelle v. Hayes et al., 118 Misc. 339, 194 N. Y. Supp. 181 (1922); see also Hoffman et al. v. Parker et al., 239 Pa. 398, 400 (1913); Clark v. Jammes et al., 87 Hun 215 (N. Y. 1895). Effect must be given to both restrictions, and a violation of either will entitle plaintiffs to injunctive relief.

The evidence clearly shows that no substantial variation in the type of building is contemplated by defendants. The alterations proposed would not change the character of this structure from a "private dwelling house" into a nonresidential establishment. It is, therefore, apparent at the outset that we have no violation of that part of the covenant limiting the type of building to be placed upon the premises.

The second part of that restriction reads as follows: "the buildings to be erected . . . shall not at any time hereafter forever be altered, changed or used for any other purpose." No matter how strictly we are compelled to construe this language, we cannot avoid the covenantor's obvious intention of excluding *any* use not comprehended by the phrase "private dwelling house". Decisions dealing with covenants forbidding "offensive uses" are therefore entirely inapplicable. The following cases, relied upon by defendants, are of that type: Dorr et al. v. Harrahan, 101 Mass 531 (1869); Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765 (1893); Gallon v. Hussar et al., 172 App. Div. 393, 158 N. Y. Supp. 895 (2d Dept., 1916). Nor do cases which distinguish a "profession" from a "business", in defining the scope of restrictions against use for "business purposes", offer substantial precedents. See, e. g., Iselin et al. v. Flynn, 90 Misc. 164, 154 N. Y. Supp. 133 (1915). Furthermore, in none of the above cases was our exact problem before

the court, and the language declaring a doctor's practicing his profession nonviolative of the various covenants involved is at most only dicta.

On the other hand, in at least two instances, a limitation against nonresidential uses has been held to bar a professional man from converting a portion of his home into offices from which to carry on his practice: Hogan v. Rose et al., 14 D. & C. 256 (Phila. C. P. 1, 1930) (dentist) ; Semple v. Schwarz et al., 130 Mo. App. 65, 109 S. W. 633 (1908) (physician). The Hogan case, decided by Justice Stern, prior to his elevation to our Supreme Court, is especially significant because of the similarity between the covenants there construed and those in the instant case. In enjoining defendant from altering and using a portion of the basement of his premises as a dentist's office, the court said (p. 257) :

"In the opinion of the court, using the new addition to the building for purposes of professional practice as a dentist would not be a use for the purposes of a private dwelling house. It is true, as above pointed out . . . that the building as a building, that is to say, as a physical structure, would still remain of the nature of a private dwelling house, but part of it would be devoted to a use other than for such purpose. Use as a private dwelling house means use by way of living, eating, sleeping and enjoying the various intellectual and social diversions incident to private family life. The practice of a profession, however, is, in part at least, for the purpose of gain. It is similar in that respect to the carrying on of a business or trade. It is no answer to say that doctors, lawyers and dentists frequently conduct their offices in their homes. To the extent to which they do this (at least habitually, regularly and continually), they are using part of their dwelling houses for other than dwelling house purposes."

This reasoning is obviously sound. It is the only way in which effect can be given to the clear wording of the

covenant without distorting an ordinary person's understanding of the term "private dwelling house". Nor is it any answer to say that physicians customarily conduct their practice from their home. Such an argument would render ineffective most restrictive covenants, for customs could be found which would permit one to turn his home into an undertaking establishment, a vocal studio, a dressmaking shop, or a grocery store, so long as the proprietor lived with his family in the same building. Yet all of those uses have been enjoined by courts, and often when the restriction involved was much less broad than that to which defendant's land is subject. Custom is a defense in an action of this sort only when the restricted property itself has been used without objection for a period of time for prohibited purposes: Boyer v. Schoch, 82 Pa. Superior Ct. 513 (1924).

Defendant's proposed use of his home as professional offices must, therefore, be enjoined. In addition, the injunction will be framed so as to cover the proposed alterations to the physical structure of the building, for, as was pointed out in the Hogan case, an alteration for an improper purpose is as much prohibited as the actual use therefor. . . .

*Decree nisi*

And now, to wit, February 9, 1940, it is ordered, adjudged, and decreed that:

Defendants Dr. William Morgan and Blanche Morgan, his wife, be and hereby are permanently enjoined from constructing on the premises 6115 Cobbs Creek Parkway, Philadelphia, Pa., any addition or alteration to the present structure for the purpose of using, or permitting to be used, said addition or alteration for any purpose other than a private dwelling house, and more particularly as doctor's offices; and that

Defendants Dr. William Morgan and Blanche Morgan, his wife, be and hereby are permanently enjoined from using premises 6115 Cobbs Creek Parkway, Philadelphia,

Pa., as doctor's offices or in the practice of the profession of medicine; and that

Defendant John H. Neeson, Chief of the Bureau of Engineering and Surveys of the City of Philadelphia, be and hereby is permanently enjoined from issuing any permit for alterations or additions to the premises 6115 Cobbs Creek Parkway, Philadelphia, Pa., for the purpose of converting the premises into doctor's offices for use in the practice of the profession of medicine; and that

Defendants Dr. William Morgan and Blanche Morgan, his wife, pay the costs of this proceeding.

### Final decree*

And now, to wit, May 23, 1940, it is ordered, adjudged and decreed that:

Defendants Dr. William Morgan and Blanche Morgan, his wife, be and hereby are permanently enjoined from constructing on the premises 6115 Cobbs Creek Parkway, Philadelphia, Pa., any addition or alteration to the present structure for the purpose of using, or permitting to be used, said addition or alteration for any purpose other than a private dwelling house, and more particularly as doctor's offices, and that:

Defendants Dr. William Morgan and Blanche Morgan, his wife, be and hereby are permanently enjoined from using premises 6115 Cobbs Creek Parkway, Philadelphia, Pa., as doctor's offices or in the practice of the profession of medicine, and that:

Defendants Dr. William Morgan and Blanche Morgan, his wife, pay the costs of this proceeding.

---

* NOTE.—Following the entry of the decree nisi Dr. and Mrs. Morgan filed exceptions which were subsequently withdrawn. The City of Philadelphia also filed exceptions to the third paragraph of the decree nisi, which were sustained on May 22nd, and on May 23, 1940, a final decree was entered in the language of the decree nisi, but with the third paragraph omitted.