DANIELS GARDENS, INC., a corporation of the State of Delaware,

*vs.*

FRANKLIN A. HILYARD and MARGUERITE E. HILYARD, his wife.

DANIELS GARDENS, INC., a corporation of the State of Delaware,

*vs.*

GEORGE B. GLACKIN and NAOMI M. GLACKIN, his wife.

*New Castle, November* 20, 1946.

*Herman Cohen,* of the firm of Cohen & Cohen, of Wilmington, for complainant.

*J. Caleb Boggs,* of the firm of Logan, Duffy & Boggs, and *Newton White,* of Wilmington, for defendants.

SEITZ, Vice-Chancellor: This court is required to determine whether the defendants have violated certain restrictive covenants contained in the deeds to their properties.

We are here concerned with two cases which were consolidated for purposes of the final hearing. The complainant in each case is Daniels Gardens, Inc., which originally owned all of a war housing development containing about 350 dwellings located near Wilmington and known as "Elsmere Manor." A great many of these dwellings have been sold by complainant, but it still owns and rents a substantial number.

Among the properties sold by complainant in Elsmere Manor are those owned by the defendants here, namely, Mr. and Mrs. Hilyard and Mr. and Mrs. Glackin (hereafter referred to as "defendants" unless additional identification is required).

The Hilyards purchased the dwelling known as 200 Birch Avenue on June 8, 1945, and since September, 1945 have used what would be their living room as a delicatessen, confectionery, and grocery store. The only alteration to the dwelling for this purpose was the placing of a composition board partition which blocked off a substantial part of the living room. However, the usual shelves, racks, etc. were installed. The exterior is unchanged, except for a small advertising sign. The Glackins purchased the dwelling known as 154 Birch Avenue May 25, 1945, and since December, 1945 have operated a "pick-up" station in the basement for the collection and distribution of clothes to be cleaned and pressed. No cleaning and pressing facilities are located on the premises. The business is conducted in one-half of the basement. The only change to the dwelling was the excavation of an entranceway through the lawn, which is raised somewhat above the street level, to a door which was cut in the cellar wall to permit customers to enter the basement. The surfaces of the entranceway have been paved and a wire fence extends on either side from the doorway to the sidewalk.

The defendants have lived in these dwellings at all times since they were purchased, and they continue to reside there.

The deed of sale given for each property sold by complainant, including the defendants', conveyed the premises subject to certain restrictions imposed on each lot by a previous recorded deed in the chain of title which covers the entire tract. The two restrictions here important are as follows:

"1. All lots indicated on the plot of the above conveyed tract of land, to be known as Elsmere Manor and to be recorded in the Office of the Recorder of Deeds in and for New Castle County aforesaid, shall be known and described as residential lots, except certain areas indicated on said plot and designated as being reserved for recreational and educational purposes and garage compounds or parking areas. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars.

*     *     *     *     *

"4. No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

Complainant contends that the acts and actions of the defendants constitute a violation of the first and fourth restrictions. In support of its contention that the first restriction has been violated, complainant relies on authorities in other jurisdictions which have construed restrictive covenants phrased in terms of "erection" or "building" as not only restricting the character of the structure which might be built, but as also requiring the use of the structure to conform to the purpose for which it was erected. See for example, *Powers v. Radding, et al.*, 225 *Mass.* 110, 113 *N.E.* 782 (dictum); *Baumert, et al., v. Malkin, et al.*, 235 *N.Y.* 115, 139 *N.E.* 210 (the existence of the word "use" in the covenant may distinguish the case, but I think not); *Barnett v. Vaughan Institute*, 134 *App.Div.* 921, 119 *N.Y.S.* 45, affirmed 197 *N.Y.* 541, 91 *N.E.* 1109; *Neilson v. Hiral Realty Corporation*, 172 *Misc.* 408, 16 *N.Y.S.2d* 462; *Hooker, et al., v. Alexander*, 129 *Conn.* 433, 29 *A.2d* 308; *Bernstein v. Min-*

*ney, et al.,* 96 *Cal.App.* 597, 274 *P.* 614; 155 *A.L.R.* 1007, 1008.

Defendants contend that the language of the first restriction does not cover the present situation and cannot be construed to do so because of certain rules of construction applicable to restrictive covenants laid down by our Supreme Court in *Gibson, et ux., v. Main,* 14 *Del.Ch.* 449, 450, 129 *A.* 259, 260, affirming with modifications, 14 *Del.Ch.* 112, 122 *A.* 188. Defendants also contend that the first restriction is inapplicable to the "use" of the premises for the further reason that the fourth restriction deals with use so that to construe the first restriction as applicable to both the character of the structure and its use would limit the meaning of the fourth restriction in a manner not warranted by the language of that covenant. Defendants further assert that the existence of the fourth covenant serves to distinguish the cases relied on by complainant.

Let us first consider the complainant's contention that the first restriction should be construed as applicable to the use as well as the character of the structure, having in mind the following rules of construction laid down by our Supreme Court in *Gibson, et ux., v. Main, supra*:

"1. That restrictions in a deed are to be taken most strongly against the grantor, and where the meaning of a restriction is doubtful, the doubt shall be resolved in favor of the grantee.

"2. In deciding what is meant by restricting words the intention of the grantor must govern, and such intention may be ascertained from the restricting words themselves, or from those words taken in connection with other words in the deed.

"Another principle of law equally well settled is, that common and ordinary words must be given the meaning that they are ordinarily understood to have."

Explicitly at least, none of the language of the first restriction deals with use. The language states what the appearance of the structure shall be and what its appearance shall continue to be. Complainant's position is, in sub-

stance, that it would have the court look at the entire agreement and say that obviously the party employing the language contained in the first restriction intended thereby to say that not only was the structure at-all times to have the appearance of a dwelling, but it was to be used only as a dwelling. The authorities relied upon by complainant apparently accept such a contention. It is apparent, however, that such an approach to the problem leaves the result almost exclusively within the purview of the court's personal feelings in the matter. While the personal element is necessarily present, I do not consider it to be the judicial function in this type of case to reach a conclusion which is premised on language read into the deed by the court.

As the words used in the first restriction are generally understood today, the restriction deals only with the type of structure and not with the use of such structure. Moreover the person who drafted these restrictions was apparently conscious of the need for employing different and more explicit language where he desired to differentiate between the character of a structure and its use. In fact the differentiation is recognized and covered in the eighth restriction, which provides in part that "The use of the said garage compounds, parking areas and driveways shall be specifically limited to the purposes for which the same are intended and shall not be used for any other purpose." I conclude that the first restriction does not encompass the use which is to be made of the structure.

Another reason exists which in part bulwarks the conclusion I have reached with respect to the first restriction. The fourth restriction explicitly enumerates certain uses of the lots which are prohibited. If the first restriction is to apply to use as well as the character of the structure, then what possible function will certain language of the fourth restriction dealing with offensive trades serve? It is interesting to note that some of the same courts which construed a restriction similar to the first covenant here involved as embracing the use as well as the character of a

structure where only the one restriction existed in the deed, have, in cases involving a covenant dealing with the character of the structure accompanied by a covenant dealing with certain excluded uses, concluded that the covenant dealing with uses exclusively defined the excluded uses. See *Carr, et al., v. Riley, et al.*, 198 *Mass.* 70, 84 *N.E.* 426; *Clark v. Jammes, et al.*, 87 *Hun, N.Y.*, 215, 33 *N.Y.S.* 1020; *Goodhue v. Cameron*, 142 *App.Div.* 470, 127 *N.Y.S.* 120; *Tonnelle v. Hayes, et al.*, 118 *Misc.* 339, 194 *N.Y.S.* 181; 155 *A.L.R.* 1007, 1012.

The theory of these cases is that all words in a deed must be given effect if reasonably possible, and that to construe a covenant dealing with the character of the structure as applying to use would render meaningless, in whole or in part, the covenant dealing exclusively with use.

Since there is no statutory or policy reason to ignore the covenant dealing with uses, it should be recognized as having some meaning. Now clearly, if the first restriction dealing explicitly with the character of the building is construed by this court as also limiting the use to which the building may be put, then the fourth restriction in so far as it deals with offensive trades and activities is rendered largely, if not entirely, meaningless. This is so because if we construe the first restriction as requiring the use of the structure to conform to the purpose for which it was required to be created, to wit, as a dwelling, then obviously no trade—offensive or otherwise—could be carried on.

Certainly, the first restriction does not in so many words deal with the use of the structure, and even if the rules of construction laid down by our Supreme Court in *Gibson, et ux., v. Main, supra,* permitted this court to take a "broad" view of the covenant under such authorities as *Baumert, et al., v. Malkin, et al., supra; Hooker, et al., v. Alexander, supra;* and *Bernstein v. Minney, et al., supra,* nevertheless, I think the existence of the fourth restriction would prevent such an approach here.

Complainant argues, however, that the fourth restriction would serve a function even though the first one be construed to apply to use. Thus, complainant says that certain incidental uses may be made of the premises even though they constitute trades and occupations, and if carried on in an "isolated" and "occasional" or "infrequent" manner do not violate either restriction. However, says complainant, it is very possible that such isolated, occasional and infrequent uses "might become annoyances or nuisances to the neighborhood, or noxious or offensive." This being so, complainant concludes that the fourth restriction would apply to such cases, and therefore has substance, even though the first restriction be construed as applicable to use.

Assuming that complainant is correct in his understanding that such "incidental" uses of the premises would be permissible, it does not follow that because the fourth restriction would apply to such uses that it would thereby be applicable only to such uses. The language of the restriction is not so limited. It is apparent, therefore, that unless complainant can advance reasons to show why no substantial part of the fourth covenant as written will be rendered meaningless by a construction of the first restriction which would make it applicable to the use of the structure, then the fourth restriction may be used by this court as a reason for construing the first covenant as inapplicable to use generally. The reason advanced by complainant based on the "incidental" use of the premises cannot be accepted because it only suggests certain uses not covered by the first restriction. It does not demonstrate that all the restrictive provisions of the fourth covenant will be meaningful even though the first restriction be construed to apply to the use of the structure. Unless this is done, it is clear that part of the fourth covenant becomes meaningless. In order to accept complainant's argument, the court would have to restrict the otherwise unrestricted meaning of the fourth covenant before it could be used as a basis for enlarging the meaning of the first covenant. I cannot see how such a pro-

cess can be indulged in by this court under a fair reading of the language involved, especially in the light of the controlling rules of construction.

Complainant also suggests a second reason why the fourth restriction is meaningful even though the first restriction be construed to be applicable to use. It says that the fourth restriction applies to activities on vacant lots as well as on lots containing dwellings, while the first restriction is confined to lots containing dwellings. The difficulty with accepting this argument, it seems to me, is that, once again, it would require the court to limit the meaning of the fourth restriction in order to enlarge the meaning of the first restriction. The fourth restriction applies to all lots. It does not differentiate between lots containing dwellings and those without dwellings. Some of its language would be meaningless, therefore, if I were to construe the first restriction as applicable to use. Complainant apparently uses the construction of the first covenant which he finds desirable as the reason for unconsciously restricting the meaning of the fourth covenant. Such a process would appear to be reasoning from a result—in fact, from the very result complainant seeks to achieve in this litigation.

While it may be urged that the letter killeth and the spirit giveth life, it is equally true that continuity and predictability require courts to construe what people have said, not what they would, in retrospect, have liked to have said.

Furthermore, authority exists for the proposition that even though a restriction such as the first covenant here involved be construed as applicable to the use as well as the character of the structure, nevertheless, such a restriction is not violated where the structure is still used in part as a dwelling—which is the case here. See *Tonnelle v. Hayes, et al.; Neilson v. Hiral Realty Corporation;* but see *Hooker, et al. v. Alexander, all supra.*

Somewhat akin to the point just mentioned is complainant's contention that even though the first restrictive cove-

nant be construed as applicable only to the character of the structure—and I have so construed it—nevertheless, the defendants have violated the restriction in that they have substantially and materially changed the structure of their dwellings.

As stated earlier, the changes made by the Hilyards consisted of the placing of a composition board partition to block off a substantial part of the living room. Certain shelves, racks, etc. were also erected. The exterior of the building is unchanged except for a small advertising sign: The only change made in the Glackins' dwelling consisted of the excavation of an entrance through the lawn to a door which was cut in the cellar wall to permit access to the basement, one-half of which was partitioned off for use in the business.

This court is called upon to determine whether the enumerated changes constitute violations of the first restriction, as construed. The statement of a general principle would seem to be in order, but the nature of the problem presents so many variables that a generalization for future guidance must be of limited value. It has been indicated that the test in such a situation is whether or not the particular occupancy leaves "the building of the same general character" as a private dwelling. See *Clark v. Jammes, et al., supra.*

Accepting the foregoing test as here controlling, it still must be determined whether the particular changes made by the defendants have brought about a change in the general character of the structures. I conclude that if the changes made by way of the new cellar entrance in the case of the Glackins, and the erection of the interior partition in the case of the Hilyards had not been for commercial purposes that they would not have changed the general character of the structures so as to constitute violations of the restriction. The fact that these changes were made for commercial purposes would seem, under the language of the re-

striction as construed, insufficient to change their general character as dwellings. Consequently, I conclude that the changes made by the defendants do not constitute violations of the covenants. Each case must be judged on the basis of the particular changes made, and the overall impression created in the mind of the court will control. If such a conclusion is said to be uncertain and indefinite, then it may be said in reply that the nature of the problem renders the stating of a rigid rule not only useless, but potentially inequitable.

Some suggestion was also made by complainant that the activities of the defendants in the conduct of the two businesses constituted independent violations of the fourth restriction. Complainant practically abandons this contention in its brief, and in fact its solicitor stated at the hearing that the condition causing this alleged violation had in the main been remedied. Moreover, I conclude that the testimony fails to demonstrate a violation of the fourth restriction as I construe it.

Since the complainant has not shown any violations of the covenants contained in the defendants' deeds, the bill of complaint should be dismissed. In the light of my conclusion, it is unnecessary to consider certain other defenses urged by the defendants.

A decree accordingly will be advised.