# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| Bay Breeze Estate Homeowners Assoication, Inc. | ) | C.A. No. 12048-MA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Charles E. Dunham and Lynda R. Dunham | ) | |
| Defendants. | ) | |

## MASTER'S REPORT

Date Submitted: November 7, 2016
Draft Report: February 13, 2017
Final Report: February 27, 2017

A homeowners association ("HOA") filed a complaint under 10 *Del. C.* § 6501 *et seq.* and 10 *Del. C.* § 348 alleging that two homeowners are in violation of an amended deed restriction because they parked a motor home in their driveway for more than 15 consecutive days and more than a total of 45 days in 2015. The homeowners denied the complaint, alleging that the recent amendment to the community's deed restrictions was invalid and, in any event, their motor home did not fit the description of the type of motor home governed by the amended deed restriction. Pending before me are the homeowners' motion to compel discovery, the HOA's motion for partial summary judgment and the homeowners' cross-motion for summary judgment. For the reasons stated below, I recommend that the Court grant

the homeowners' cross-motion for summary judgment and dismiss the remaining motions as moot.

Factual Background

Defendants Charles and Lynda Dunham own a house in the Bay Breeze Estates, a subdivision located within the City of Lewes, Delaware. They also own a large motor home that cost in excess of $200,000. The Dunhams use their motor home for vacationing in the north during the summer and in the south during the winter. When not away on four-month long trips, the Dunhams reside in Lewes and park their motor home in the driveway of their lot in Bay Breeze Estates, evidently to the annoyance of some neighbors.

The lots and common areas within this subdivision are subject to certain restrictive covenants under a Declaration and Restrictions of Bay Breeze Estates ("the Declaration") that was originally recorded on December 8, 1986 in the Recorder of Deeds Office in Sussex County. Section 10(E) of the Declaration states in relevant part that:

> No camper, trailer, recreational vehicle, truck (other than a pick up truck), or any vehicle or any principal component thereof shall be parked stored, or maintained for more than three consecutive days per month on any lot or street unless the vehicle is used and designed principally for personal transportation and is not capable of or principally designed for temporary or permanent habitation.[1]

---

[1] Complaint, Ex. 1 at *7. Docket Item ("DI") 1.

The Declaration was amended on April 4, 1992, and Section 10(E) was revised in relevant part to state:

> No vehicle designed for permanent or temporary habitation, be it camper, trailer or recreational vehicle shall be parked or maintained on the streets at any time except for temporary duration not to exceed forty-eight (48) hours. Any owner's guests [sic] vehicles for vacation, i.e., camper trailer or recreational vehicle shall not be allowed to be parked in a driveway for more than seven (7) days without express written consent of the Board. Parking of commercial vehicles over two axles is prohibited at all times.[2]

Another amendment to the Declaration on September 5, 1992, modified Section 10(E) by deleting the words "over two axles" and inserting in its place "larger than a conventional pick-up truck."[3]

In June 2014, members of the HOA voted to amend the Declaration a fourth time. The Fourth Amendment to Declaration and Restrictions for Bay Breeze Estates ("Fourth Amendment") was passed by a total of 61 affirmative votes and was executed on August 5, 2014.[4] The Fourth Amendment revised Section 10(E) so that it now states:

---

[2] *Id.*, Ex. 2 at 8.

[3] *Id.*, Ex. 3 at ¶11. This amendment also added language limiting the amount of time a motor vehicle with an expired license or one which is disabled could be parked on the streets and authorizing the HOA to have such vehicle removed and stored. The amendment also added a new Paragraph 10(U) restricting the parking of boats to driveways or garages and limiting boat parking in driveways to no more than three consecutive days between December 1 and March 15 of any year. *Id.*, Ex. 3 at ¶12.

[4] *Id.,* Ex. 5. According to the document, a vote of all lot owners was by ballot sent via first class mail by the President of the HOA, and returned to John E. Henriksen, Esq. The ballots were tabulated in the presence of the President, the HOA's counsel,

No motorized vehicle designed for permanent or temporary habitation, referred to as a camper, recreational vehicle or motor home, but only those vehicles designed for permanent or temporary habitation installed on a commercial truck or commercial bus chassis, shall be parked or maintained on the streets at any time except for temporary duration not to exceed forty-eight (48) hours. Any motorized vehicle referred to as a camper, recreational vehicle or motor home, but only those vehicles designed for permanent or temporary habitation installed on a commercial truck or commercial bus chassis shall not be parked within any residential lot for more than fifteen (15) consecutive days and for no more than forty-five (45) days annually after January 1, 2015. No commercial vehicle over two (2) axels [sic] is allowed on the streets or within any lot of the Subdivision. Further, no stripped down, partially wrecked, or junk motor vehicle or sizable part thereof, shall be permitted to be parked on any street in the Subdivision or any lot in such manner as to be visible to the occupants or owners of other lots in the Subdivision. Further, no motorized vehicle designed for permanent or temporary habitation, referred to as a camper, recreational vehicle or motor home, shall be parked in any common area not part of the streets within the Bay Breeze Subdivision. No trailer or camper, being a non-motorized vehicle designed for permanent or temporary habitation is allowed in any part of the Bay Breeze Subdivision, whether it is a street, common area or lot within the subdivision.[5]

By letter dated November 13, 2015, the HOA notified the Dunhams that they had violated Section 10(E) three times by parking their motor home in their driveway in excess of 15 consecutive days on two separate occasions and by parking their motor home in their driveway for a total of 47 days, in excess of the 45-day limit.[6] In this letter, the HOA also notified the Dunhams that they would be assessed a fine of not less than $25.00 per day for each further violation of the motor home restrictions.

---

and counsel for certain residents who were opposed to the amendment. More than 60% of the then owners of lots in the subdivision were in favor of the amendment, as required by the Declaration.

[5] *Id.*, Ex. 4 at 1-2.

The Dunhams refused to accept the letter that had been sent to them by priority mail express.[7] A copy of the November 13th letter was then sent to the Dunhams by first class mail.[8]

## Procedural Background

On February 25, 2016, the HOA filed its complaint in this Court, seeking a declaratory judgment against the Dunhams, declaring that they are bound by the Declaration and specifically mandated to follow the Fourth Amendment's revised Section 10(E) regarding parking motor homes "subject to the criteria of such Section in 2016 and in each year thereafter under the Declaration unless amended[,]" and are liable for violations of the restrictions in an amount to be determined, with interest at the Delaware legal rate from November 27, 2015, and attorney's fees and costs.[9]

On April 14, 2016, the Dunhams responded to the HOA's complaint by claiming that the Fourth Amendment is void or voidable because it did not receive the required number of votes and also that it is vague and ambiguous. The Dunhams also allege that the HOA is estopped from enforcing the Fourth Amendment against them because they had purchased their house and motor home in reliance on the ability to

---

[6] *Id.* Ex. 6.
[7] *Id.*, Ex. 7.
[8] *Id.*, Ex. 8.
[9] *Id.* at 11.

park the motor home temporarily in their driveway.[10]  Finally, the Dunhams allege that their motor home does not fit the description of vehicles governed by the Fourth Amendment's Section 10(E).

On July 8, 2016, the HOA moved for partial summary judgment on the issue of the validity of the Fourth Amendment.[11]  According to the HOA, the Dunhams are estopped from now challenging the Fourth Amendment because they failed to challenge it within one year of the date of its recording, citing 25 *Del. C.* § 81-217(b).[12]  On July 15, 2016, the Dunhams moved to compel the HOA to respond to their first request for production of documents pertaining to the adoption of the Fourth Amendment.[13]  Then, on August 31, 2016, the Dunhams filed a cross motion for summary judgment, arguing that the limitations period of 25 *Del. C.* § 81-217(b) does not apply to the Fourth Amendment and, furthermore, the Fourth Amendment failed to get the supermajority number of votes required under 25 *Del. C.* § 81-217(f).[14]

---

[10] Answer to Verified Complaint.  DI 6.

[11] Motion for Partial Summary Judgment.  DI 27.

[12] 25 *Del. C.* § 81-217(b) states: "No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than 1 year after the amendment is recorded."

[13] Motion to Compel.  DI 28.

[14] Cross Motion for Summary Judgment.  DI 38.  25 *Del. C.* § 81-271(f) states:
> By vote or agreement of unit owners of units to which at least 80 percent of the votes in the association are allocated, or any larger percentage specified in the declaration, an amendment to the declaration may prohibit or materially restrict

Analysis

Although both parties in this case have filed motions for summary judgment, the standard of review remains the same. A party's motion for summary judgment may be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.[15]

When considering an action to enforce a restrictive covenant, the court is mindful of the competing legal interests. A restrictive covenant or deed restriction implicates both contract rights, such as the right of a buyer and seller to enter into a binding contract, and property rights, such as a person's right to the free use of his or her land.[16] Where these two rights conflict, the law favors the free use of the land.[17] Accordingly, in cases where there is ambiguity in the restrictions, all doubts are resolved against the party seeking to enforce them.[18]

---

the permitted uses of or behavior in a unit or the number or other qualifications of persons who may occupy units. The amendment must provide reasonable protection of a use or occupancy permitted at the time the amendment was adopted.

[15] *See Bethany Village Owners Ass'n, Inc. v. Fontana*, 1997 WL 695570, at *2 (Del. Ch. Oct. 9, 1997).

[16] *Service Corp. of Westover Hills v. Guzzetta*, 2009 WL 5214876, at *3 (Del. Ch. Dec. 22, 2009) (citing *Chambers v. Centerville Tract No. 2 Maint. Corp.*, 1984 WL 19485, at *2 (Del.Ch. May 31, 1984)).

[17] *Id.* (citing *The Cove on Herring Creek Homeowners' Ass'n, Inc. v. Riggs*, 2003 WL 1903472, at *2 (Del. Ch. Apr. 9, 2003), *aff'd,* 832 A.2d 1252 (Del. 2003); *Bethany Village Owners Ass'n, Inc.*, 1997 WL 695570, at *2).

[18] *See Daniels Gardens, Inc. v. Hilyard*, 49 A.2d 721, 723 (Del. Ch. 1946) (citing *Gibson et ux. v. Main*, 129 A. 259, 260 (Del. 1925)).

The parties have argued at great length about the proper application of the Delaware Uniform Common Interest Ownership Act to this dispute, but the case can be decided on narrower grounds.[19] The parties submitted affidavits and exhibits with their respective motions for summary judgment. Attached to the affidavit of Charles and Lynda Dunham are copies of a letter from Peter McCarron of Berman Freightliner[20] and of the warranty registration for the Dunhams' motor home. In their affidavit, the Dunhams aver that they own "an RV Motorhome described as: FCC FTL CHASSIS CORP model RV00042S base model XCR CHASSIS," which is not a commercial truck or commercial bus chassis.[21]

Attached to the affidavit of Larry G. Edwards, president of the HOA, are two printed brochures from the Freightliner websites.[22] In his affidavit, Edwards avers that the Bay Breeze Estates *ad hoc* Motorhome Committee consulted numerous sources to define/describe the types of motor homes it felt the neighborhood wished to restrict. Edwards recited the following language from one "typical source from the RV industry" on which the committee relied:

---

[19] *See* Chapter 81 of Title 25 of the Delaware Code.

[20] This letter, which is not notarized or verified, states, "Per Freightliner Chassis, this code of XCR cannot be used for any commercial use, only R.V. operations. See attached Registration form." Defendant's Cross Motion for Summary Judgment, Ex. 7. DI 38.

[21] *Id.*

[22] Answering Brief to Defendants' Cross Motion for Summary Judgment, Ex. 3 (Ex. A (http://www.fcccbus.com/chassis/xb) & Ex. B (http://fcccrv.com/chassis/xc)) DI 41.

Class A Motorhome: Class A Motorhomes are built on heavy duty frames. The frames are constructed on either a commercial truck chassis, a specially designed motor vehicle chassis or a commercial bus chassis. These frames use similar construction to the big 18 wheelers you see on the highways. They have 22.5 inch wheels which are designed for carrying a heavier load. These vehicles can either run by gas or diesel and usually get 8-10 miles per gallon. Class A Motorhomes usually have a minimum of two slide-outs. Class A Motorhomes are known for high luxury and quality. They are very roomy with large living spaces and tons of storage. Class A Motorhomes sleep 2-4 people with a bedroom in the back of the coach and the couches in the living area folding down into beds. If you're looking for a motorhome with high luxury, residential features from home, and tons of space, a Class A Motorhome is for you.[23]

Edwards avers that the above description exactly describes the motor home belonging to the Dunhams and it was the intent of the community that the restrictive covenant would apply to the Dunhams' motor home. Edwards also acknowledges in his affidavit that the warranty registration for the Dunhams' motor home specifies that the vehicle has a XCR chassis. Referring to photographs on the Freightliner website, Edwards avers that the frame of the XBR bus chassis is identical to the XCR chassis.[24]

---

[23] *Id.*, Ex. 3 at 2 (citing https://bishsrv.wordpress.com/2012/03/05/differences-between-class-a-b-c-motorhomes/.).

[24] Exhibit A, which is attached to Edwards' affidavit, contains the following description of the XB chassis:

The XB Series diesel pusher chassis accommodates all routes – from one-way downtown city streets to two-lane country highways – thanks to its superior maneuverability with up to 60-degree wheel cut. With excellent ride and handling and 3 frame rail configurations, the XB chassis offers up to 300 hp and 660 lb.-ft. torque and exceptional fuel economy.

The parties do not dispute that the Dunhams' motor home was installed on an XCR chassis. Although the HOA claims that the XCR chassis is identical to the commercial bus chassis manufactured by the same company, according to the company's own literature, the XC series of chassis is designed for motor homes and the XB series of chassis is designed for commercial buses and trucks.

Since it is undisputed that the Dunhams' motor home was not installed on a commercial bus or truck chassis, I do not need to address the parties' arguments concerning the appropriate construction of Chapter 81 of Title 25 of the Delaware Code because, assuming for the sake of argument that the Dunhams' current challenge to the validity of the Fourth Amendment is untimely, the Dunhams were not in violation of Section 10(E) during 2015. The Dunhams' motor home is not prohibited under the language of Section 10(E) as revised by the Fourth Amendment. The Court cannot enlarge the plain meaning of this restrictive covenant to include by implication a motor home installed on a non-commercial vehicle chassis simply

---

Exhibit B, which is also attached to Edwards' affidavit, contains this description of the XC chassis:

> For nearly 20 years, the XC series chassis has been continuously refined to be the most innovative, most supported and best performing chassis in the industry. As the first choice of more luxury motorhome manufacturers than any other chassis, more than 78% of all Class A diesel motorhomes ride on XC. Offering power, space and versatility, the XC is designed for increased GVWR – up to 47,000 lbs. – plus floorplan flexibility through a variety of frame rail configurations.

DI 41.

because the HOA specifically intended the Fourth Amendment to apply to the Dunhams' motor home.[25]

Conclusion

For the reasons stated above, the Dunhams' cross motion for summary judgment should be granted and the HOA's motion for partial summary judgment and the Dunhams' motion to compel should be dismissed as moot. Attorney's fees should be awarded to the Dunhams under 10 *Del. C.* § 348(e).

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[25] *See Daniels Gardens, Inc.*, 49 A.2d at 723 ("Another principle of law equally well settled is, that common and ordinary words must be given the meaning that they are ordinarily understood to have.") (quoting *Gibson*, 129 A. at 260)).