# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ALFRED MOUSLEY and<br>TERESA MOUSLEY,<br><br>    Plaintiffs,<br><br>    v.<br><br>VINCENT OVERLOOK<br>HOMEOWNERS ASSOCIATION,<br>INC.,<br><br>    Defendant. | )<br>)<br>) C.A. No. S23C-10-027 CAK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted:  February 13, 2025
Decided: February 28, 2025

*Upon Plaintiffs' and Defendant's Cross-Motions for Summary Judgment
under Delaware Superior Court Civil Rule 56*

**PLAINTIFFS' MOTION DENIED
DEFENDANT'S MOTION GRANTED IN PART AND DENIED IN PART**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Dean A. Campbell, Esquire, Law Office of Dean A. Campbell, PA, 703 Chestnut Street, Milton, DE 19968, Attorney for Plaintiffs.

Stephen D. Dargitz, Esquire, O'Hagan Meyer PLLC, 800 North King Street, Plaza – 1, Wilmington, DE 19801, Attorney for Defendant.

Kevin Golden, Esquire, *Pro Hac Vice*, O'Hagan Meyer PLLC, 1717 Arch Street, Suite 3910, Philadelphia, PA 19103, Attorney for Defendant.

**KARSNITZ, R. J.**

## INTRODUCTION

As Shakespeare asks in *Romeo and Juliet*, what's in a name?[1] A name is "a word or phrase identifying or designating a thing and distinguishing that thing from others."[2] A name is a term used for identification by an external observer. It can identify a class or category of things, or a single thing, either uniquely or within a given context. Consider the term "commercial vehicle." Is that term vague, ambiguous, and open to subjective determination, or, in the context of this case, is it reasonably susceptible of objective determination, or both? In this case, much turns on the answer to this question.

## FACTS

In 2020, Alfred and Teresa Mousley, husband and wife ("Plaintiffs"), purchased a home at 29691 Vincent Village Drive (the "Property") in the community of Vincent Overlook in Milton, Delaware. Vincent Overlook is subject to a certain recorded Declaration of Covenants, Conditions and Restrictions (the "Declaration") for Vincent Overlook Homeowners Association, Inc. ("Defendant"). Section 8.8.D of the Declaration provides:

> No Owner may park or maintain anywhere on the Property other than in an enclosed garage a boat, trailer, bus, camper, recreational vehicle, utility trailer, *commercial vehicle* or oversized vehicle.

---

[1] As Juliet says in a soliloquy in Act 2, Scene 2, "What's in a name? That which we call a rose by any other name would smell as sweet."
[2] BLACK'S LAW DICTIONARY (9th ed. 2009)

[emphasis supplied]

Mr. Mousley ("Plaintiff") is a master plumber who owns and operates Mousley Plumbing, LLC (the "Company") out of the Property. He is the only employee of the Company. One of his vehicles is a truck (the "Vehicle").[3] Plaintiff uses the Vehicle exclusively in the course of his business for the Company. When he receives calls and assignments, he drives the Vehicle to purchase job parts and then to the jobsite. The Vehicle does not display any commercial advertising, lettering, or writing and is not equipped with any ladder racks, exterior toolboxes, external compressors, or the like. The Vehicle is registered as a commercial vehicle with a commercial license plate, is insured as a commercial vehicle through an insurance policy where the Company is the insured, and is claimed by Plaintiffs as a business deduction on their tax returns. Plaintiff parks the Vehicle in the driveway of the Property. It is too large to fit within the enclosed garage.

On October 15, 2021, Plaintiffs received their first Notice of Violation putting them on notice that they were in violation of the deed restrictions for parking a "commercial vehicle" on the Property. On January 14, 2022, Plaintiffs

_____

[3] During the course of this case, Plaintiff owed two trucks. The first was a Chevy 3500 truck, and the second is a 2024 Ford truck. Both trucks were treated identically as discussed in this opinion, and for ease of reference both will be included in the definition of "Vehicle."

received a Second Violation Notice. On February 21, 2022, Plaintiffs received a Third Violation Notice which threatened sanctions and fines and indicated that their right to access community amenities (such as the pool) had been terminated.

The Third Violation Notice also referenced Plaintiffs' rights to have their case heard by Defendant on an appeal. On February 28, 2022, a hearing was held before Defendant which upheld the violation and indicated it would assess a fine of $50 per day for as long as the Vehicle remained on the Property and outside an enclosed garage, retroactive to the date of the hearing.

Following the hearing, an attorney drafted a letter for Plaintiffs stating their position that the restriction in the Declaration was unenforceable because it was vague and ambiguous and open to subjective determination. Plaintiffs promptly shared this letter with Defendant.

On August 1, 2022, Defendant, through counsel, informed Plaintiffs that they owed a total of $3,470.00 in assessments, plus attorneys' fees and costs. The letter stated that, if these amounts were not paid, a statutory lien would be filed on the Property with the Recorder of Deeds under the 2009 Delaware Uniform Common Interest Ownership Act ("DUCIOA"),[4] and they would incur additional

---

[4] 25 *Del. C.* §81-101 et seq. There is no evidence of record that such a lien was ever filed of record. However, for purposes of Defendant's Motion for Summary Judgment, I am viewing the facts in a light most favorable to Plaintiffs. In any event, DUCIOA creates an inchoate lien.

attorneys' fees and costs. Plaintiffs have continued to pay regular operating and reserve assessments unrelated to the Vehicle issue. However, the per diem fine and the attorneys' fees and costs have continued to accrue as a statutory lien on the Property.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on October 23, 2023, and Defendant filed its Answer on December 4, 2023. Plaintiffs filed an Amended Complaint on April 19, 2024, and Defendant filed its Answer and Counterclaim on April 29, 2024. Plaintiffs filed their Answer to the Counterclaim on May 8, 2024.[5]

Plaintiffs filed their Motion for Partial Summary Judgment on October 11, 2024, Defendant filed its Opposition on December 6, 2024, and Plaintiffs filed their Reply on January 24, 2025. Defendant filed its Motion for Summary Judgment on November 18, 2024, Plaintiffs filed their Opposition on December 6, 2024, and Defendant filed its Reply on January 24, 2025.

I held oral argument on February 13, 2025. This is my decision on the Motions for Summary Judgment.

## STANDARDS OF REVIEW

Summary judgment is appropriate when the moving party demonstrates

---

[5] I have omitted references to Defendant's Motion *in Limine*, Plaintiffs' Answer, and Defendant's Reply, as they are not relevant to my decision in this case.

that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.[6] In reviewing a motion for summary judgment, I view the facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party.[7] Once the moving party establishes that there are no material factual issues in dispute, the non-moving party bears the burden of demonstrating a material factual issue by offering admissible evidence.[8] The non-moving party may not simply rest on unverified allegations or unsupported statements of fact in a brief.[9] "The purpose of Superior Court Civil Rule 56 is to provide a method by which issues of law involved in a litigation may be speedily brought before a trial court and disposed of without unnecessary delay. 'The disposition of litigation by motion for summary judgment should, when possible, be encouraged for it should result in a prompt, expeditious and economical ending of lawsuits.'"[10]

When, as here, the parties file cross-motions for summary judgment and do not argue that there is a material issue of fact, the court will treat the motions as a stipulation for a decision on the merits based on the record submitted with the

---

[6] Del. Super. Civ. R. 56(c); *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

[7] *DiOssi v. Maroney,* 548 A.2d 1361, 1362 (Del. 1988).

[8] Del. Super. Civ. R. 56(e); *Phillips v. Del. Power & Light Co.,* 216 A.2d 281, 285 (Del. 1966).

[9] Super. Ct. Civ. R. 56(e); *Martin v. Nealis Motors, Inc.*, 247 A.2d 831, 832 (Del. 1968); *Standard Accident Ins. Co. v. Ponsell's Drug Stores, Inc.*, 202 A.2d 271, 276 (Del. 1964); *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979).

[10] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005) (internal citations omitted).

motions.[11] The court must examine each motion separately, applying the same standard to each. The existence of cross-motions does not necessarily indicate that summary judgment is appropriate for either party. Each party must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.[12] Filing a cross-motion for summary judgment does not waive a party's right to assert that there are disputed facts that preclude summary judgment in favor of the other party. Each party concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion.[13] Even when presented with cross-motions, the court must deny summary judgment if a material factual dispute exists. The court must view the facts in the light most favorable to the nonmoving party and determine if the record requires further development to clarify the law or its application to the case.[14]

Deed restrictions, like the Declaration in this case, are contractual agreements and therefore the same rules pertaining to contract interpretation are

---

[11] *Farmers for Fairness v. Kent County*, 940 A.2d 947 (Del. 2008); *Waters v. Delaware Moving and Storage, Inc.*, 300 A.3d 1 (Del. 2023).

[12] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003 (Del. 2007); *Fasciana v. Electronic Data Systems Corp.*, 829 A.2d 160 (Del. 2003).

[13] *Waters v. Delaware Moving and Storage, Inc., supra*; *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 *(2001).*

[14] *Fasciana v. Electronic Data Systems Corp., supra*; *Comet Systems, Inc. Shareholders' Agent v. MIVA, Inc.*, 980 A.2d 1024 (Del. 2008).

used to interpret deed restrictions. [15] Questions of statutory and contract interpretation are solely questions of law for me to decide, and summary judgment is appropriate.[16]

With respect to a declaratory judgment, "courts of record within their respective jurisdictions shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[17] The prerequisites for an actual controversy under Delaware's Declaratory Judgment Act are: (1) it must be a controversy involving the rights or legal interests of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between the parties whose interests are real and adverse; and (4) the issue involved in the controversy must be ripe for determination.[18]

## ANALYSIS

In my view, Defendant has satisfied the standards for summary judgment

---

[15] *Benner v. Council of Narrows Ass'n of Owners,* 2014 WL 7269740, at *1 (Del. Ch. Dec. 22, 2014), *adopted sub nom. Benner v. The Council of the Narrows Ass'n of Owners* (Del. Ch. 2015).

[16] *Pike Creek Recreational Servs., LLC v. New Castle Cnty.,* 238 A.3d 208, 213 (Del. Super. Ct. 2020), *aff'd* 259 A.3d 724 (Del. 2021).

[17] 10 *Del. C.* § 6501.

[18] *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 600 660, 662-63 (Del. 1973) (citing *Marshall v. Hill*, 93 A.2d 524, 525 (Dep. Super. Ct. 1952).

8

(including the interpretation of the deed restrictions in the Declaration) and the requirements for a declaratory judgment. Defendant has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, even though I have viewed the facts in a light most favorable to Plaintiffs and drawn all reasonable inferences in favor of Plaintiffs. Plaintiffs have not borne the burden of demonstrating a material factual issue. They cannot simply rely on mere allegations or conclusory statements of fact. This resolution of the case will allow issues of law to be promptly, expeditiously and economically resolved.

This resolution requires the legal interpretation of the deed restrictions in the Declaration. I construe the language of the Declaration against the drafter (Defendant). In my view, discussed more fully below, no reasonable person could construe the Vehicle to be anything other than a "commercial vehicle."

Defendant has also satisfied the requirements for a declaratory judgment: (1) the controversy at issue (whether the Vehicle is a "commercial vehicle") involves the rights of Defendant under the Declaration; (2) Defendant's claim has been asserted against Plaintiffs, who have an interest in contesting the claim and have done so in their Answer to Counterclaim; (3) the interests of Defendant and Plaintiffs are real and adverse; and (4) the dispute is ripe for determination. Accordingly, it is appropriate for me to enter declaratory relief.

**Adequate Notice of Deed Restriction**

9

Plaintiffs stress that deed restrictions which limit the use of property must have "clear, precise, and fixed standards of application. Such is necessary to 'constrain subjectivity and promote even-handed application. Specificity also ensures *adequate notice* to homeowners regarding what is restricted; '[r]estrictive covenants which are too vague to serve these functions of notice and fairness are unenforceable.'"[19]

### Vagueness/Subjectivity

The biggest enemy of adequate notice is vagueness, which opens the possibility for subjective interpretation. Both this Court and the Court of Chancery have addressed this issue. For example:

> The enforcement of restrictive covenants implicates two competing legal interests: (1) the right of a willing buyer and a willing seller to enter into a binding contract, and (2) the special nature of land, which historically has been permitted free use. In an effort to reconcile these two interests, the Delaware courts have developed particular rules governing the application of restrictive covenants. Although restrictive covenants are recognized and enforced when the parties' intent is clear and the restrictions are reasonable, ambiguous covenants are construed so as to limit the effect of the restriction.[20]

Where the language used in the restrictive covenant is overly vague, imprecise, or so unclear as not to lend itself to even-handed application, then the grant of

---

[19] *Yu, Tr. of Elmer Yu Revocable Tr. v. Cahill,* 2024 WL 4100859, at *6 (Del. Ch. Sept. 6, 2024) [Emphasis supplied and internal citations omitted].

[20] *Benner v. Council of Narrows Ass'n of Owners,* 2014 WL 7269740, at *7 (Del. Ch. Dec. 22, 2014), *adopted sub nom. Benner v. The Council of the Narrows Ass'n of Owners* (Del. Ch. 2015).

authority is normally not enforceable.[21] "[A]ny ambiguity in the deed restrictions must be read in the [property owner's] favor... "[22] Deed restrictions based on clear and precise terms and objective criteria are enforceable. Conversely, "actions based on purely subjective criteria are not [enforceable]."[23] "Interpreting deed restrictions is a matter of contract interpretation and provisions are construed by determining original intent from the plain and ordinary meaning of the words. Any ambiguities in the deed restrictions are resolved in favor of the grantee and against the grantor (the Association). If the language is ambiguous, or "reasonably susceptible of different interpretations," the Court may consider extrinsic evidence to determine intent and "ascribes to the words their common or ordinary meaning and interprets them as would an objectively reasonable third-party observer."[24] Where a deed restriction's meaning is uncertain, or doubtful, the uncertainty should be resolved in favor of the property owner.[25]

One can always seek the true meaning of a term, and if it requires definition,

---

[21] *Point Farm Homeowner's Ass'n., Inc. v. Evans,* 1993 WL 257404, at *3 (Del. Ch. June 28, 1993).

[22] *Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.,* 2005 WL 1252351, at *4 (Del. Ch. May·12, 2005), *aff'd,* 2005 WL 2810724 (Del. Ch. Oct. 21, 2005).

[23] *Id.*

[24] *Quail Vill. Homeowners Ass'n, Inc. v. Rossell,* 2018 WL 6534456, at *5 (Del. Ch. Dec. 10, 2018).

[25] *Daniels Gardens, Inc. v. Hilyard,* 49 A.2d 721, 723 (Del.Ch. 1946).

cry "ambiguity." But terms have common meanings and are susceptible to reasonable interpretation. "Commercial vehicle" is such a term. Plaintiffs initially claimed they were compliant because their truck had no lettering. That interpretation is severely limited. Because the parties can speculate about a variety of interpretations does not, in my view, make a term ambiguous. There are many types, appearances and sizes of commercial vehicles. But the fact that a term requires reasonable application does not necessarily mean that it isn't susceptible of reasonable determination in a given factual context. It follows *a fortiori* that ambiguity and enforceability are not necessarily mutually exclusive. In short, this is not a case about the ambiguity of a term, but rather a disagreement among the parties as to how to apply the term. I face such issues all the time in deciding cases. Interpretation of terms is a common task of the law and is accomplished by considering the facts of a particular case and applying legal precedent and the common understanding of a reasonable person. I see no reasonable description of the Vehicle in this case other than a "commercial vehicle." The Vehicle is registered with the DMV as a commercial vehicle, is insured by Plaintiff's commercial plumbing company, is used exclusively to conduct Plaintiff's commercial business, has a commercial license plate, and is claimed as a business deduction for Tax purposes by Plaintiffs. In my view, the lack of signage on the vehicle in and of itself

is insufficient to change this interpretation.[26]

Plaintiffs cite *Bay Breeze Estates Homeowners Association v. Dunham*[27] as authority for the degree of precision necessary for enforcement of a deed restriction limiting a type of vehicle. In the original deed restrictions, campers, trailers, recreational vehicles and trucks (other than normal pick-up trucks) were prohibited. In 1992 the restriction was amended to define "camper" or "recreational vehicle" as a "vehicle designed for permanent or temporary habitation." In 2014, the definition was again amended by defining the vehicle chassis. However, the Magistrate deciding the case determined that the vehicle did not meet the very precise definition.[28]

In Delaware, much of the case law surrounding enforcement of deed restrictions involves building design and architectural criteria within subdivided communities. The harm to be avoided in the law of deed restriction enforcement, according to Court of Chancery case law, is "arbitrary and capricious" enforcement.[29] Subjectivity should be avoided. In *Seabreak,* the Association argued it had the authority to create a building setback because of its "implicit

---

[26] I give little if any weight to Plaintiff's Affidavit to the effect that he was told by someone that signage was the determinative factor. That statement is self-serving and stretches credibility.
[27] 2017 WL 765835 (Del. Ch. 2017).
[28] *Id.*
[29] *Seabreak Homeowners Ass'n, Inc. v. Gresser,* 517 A.2d 263 (Del. Ch. 1986), *aff'd, 538 A.2d 1113 (Del. 1988).*

13

broad grant of authority" in the declaration. The Court rejected that argument, holding that "fundamental fairness requires that a property owner be given notice" of what constitutes a violation.[30]

In the area of architectural review, the law allows a homeowners' association to create architectural guidelines to describe what is acceptable and what is not, provided such authority is identified in the Declaration.[31] Plaintiffs cite *Canal Corkran Homeowners Ass'n, Inc. v. Petrone* [32] for the proposition that deed restrictions must "serve a legitimate purpose and provide sufficient notice as to what constitutes appropriate conduct by the homeowner. [I]f the language of a restrictive covenant is so vague that it does not provide clear, precise, and fixed standards of application, [it is unenforceable.]"[33] This case undercuts Plaintiffs' argument. In *Petrone*, the issue was whether a crushed oyster shell driveway was a "solid surface" such as concrete, asphalt or brick for purposes of compliance with the homeowners' association declaration and architectural standards. Despite homeowner's protestations that the crushed oyster shell surface was a "solid surface," the Master in Chancery disagreed, ordered that the driveway be

---

[30] *Id.*

[31] *Reybold Venture Group XI-A, LLC v. Smith,* 2012 WL 2874042 (Del.Ch. 2012).

[32] 2017 WL 1450168 (Del. Ch. Apr. 21, 2017).

[33] Id. at *4, citing *Seabreak.*

replaced, and shifted the association's significant attorneys' fees to the homeowner. The term "commercial vehicle" is no more ambiguous than the term "solid surface."

In summary, I find that, although one can always argue different interpretations, in the context of the facts of this case, no reasonable person could construe the Vehicle to be anything other than a "commercial vehicle." The term "commercial vehicle" is sufficiently precise to be enforceable. As such, its presence in the driveway constitutes a violation of the Declaration.

### Selective Enforcement

In addition to clarity, the language used in a restrictive covenant cannot lend itself to uneven application or selective enforcement. If it does, then the grant of authority is normally not enforceable.[34] I see no evidence of record that establishes that Defendant picked out Plaintiffs for disparate treatment from, and to the exclusion of, other homeowners. Indeed, there were three (3) other vehicles in Vincent Overlook violated for being commercial vehicles. Two (2) were vehicles which had lettering advertising for the business on the vehicle. One

---

[34] *Wilmington Friends School, Inc. v. Alapocas Maintenance Corporation,* 2022 WL 2134679, fn. 9 (Del. Ch. 2022) (citing to *Seabreak Homeowners Ass'n Inc. v. Gressler,* 517 A.2d 263 (Del. Ch. 1986)*, aff'd. Alapocas Maintenance Corporation v. Wilmington Friends School, Inc.,* 303 A.3d 36 (Del. 2023).

vehicle was a standard pick-up truck and the other was a standard passenger car, with the distinguishing feature being lettering on the vehicle. Defendant sent a notice of violation to Robin Bascio, the owner of a third vehicle, used by the business of Frank & Louie's Italian Specialties. Even if I did find disparate treatment, that does not alter the equation of what constitutes a violation of the Declaration in this context vis-à-vis Plaintiffs.

## Civil Extortion[35]

Plaintiffs cite an Iowa case for the proposition that Defendant has civilly extorted Plaintiffs. The elements of civil extortion are: (1) one or more of the defendants, with the purpose of obtaining for themselves or another, anything of value, threatened to wrongfully injure the property of another; (2) the threat was communicated to and directed toward plaintiff; (3) the defendants' actions were the proximate cause of plaintiffs' damages; and (4) the amount of damages.[36]

However, Delaware does not recognize a civil cause of action for extortion.[37] In *Desmond*, the plaintiffs filed a count seeking relief based on a *criminal* extortion statute. The criminal statute requires that one party induce another to deliver property to themselves or another "by means of instilling in him a fear that, if the

---

[35] The Amended Complaint and Defendant's Counterclaim also addressed claims of breach of contract and slander of title, but these claims were not pursued in the reciprocal Motions for Summary Judgment.

[36] *Duncan v. Ford Motor Credit, Repossessors, Inc.,* 919 N.W.2d 768 (Iowa Ct. App. 2018).

[37] *Desmond v. Lucks*, 1988 WL 90500 (Del. Super. Aug. 19, 1988).

property is not so delivered, the defendant or another will" cause injury or damage.[38] The court was presented with the question of whether there was a "statutory basis for a civil cause of action." Following an analysis of legislative intent, the court concluded that there was no civil cause of action for extortion.[39]

Even if there were such a claim recognized in Delaware, Plaintiffs argue that Defendant's assessment of fines and attorneys' fees against Plaintiffs created a statutory lien under DUCIOA against the Property which hung like a sword of Damocles over Plaintiffs, chilling their ability to sell the Property and pressuring them to satisfy the lien by payment or, as in this case, incurring the costs of a civil action. Meanwhile, argue Plaintiffs, the assessments earned money for Defendant. Moreover, Defendant's actions caused Plaintiffs stress, anxiety, and monetary losses primarily in the form of attorneys' fees.

I find no evidence of record that Defendant, for the purpose of obtaining something of value for itself, communicated a threat to Plaintiffs to wrongfully injure them or their Property, which proximately caused damages to Plaintiffs.

## Monetary Relief

### Fines

---

[38] *Id*. at *4.
[39] *Id*. at *8.

Defendant has sought to impose and collect fines from Plaintiffs for their violations of the Declaration at the rate of $50 per day. On June 3, 2022, Defendant informed Plaintiffs that the fines owed were $3,450. On October 14, 2022, Defendant advised Plaintiffs that these fines were waived. However, in a letter from Defendant's attorney dated March 14, 2023, Plaintiffs were advised that the fines would begin to be assessed again, would be added to the amounts they owed as assessments, and would operate as an inchoate lien on the Property under the Declaration and DUCIOA. On August 28, 2023, Defendant advised Plaintiffs that the fines owed were $3,515. In its pleadings, Defendant seeks fines against Plaintiffs at the rate of $50 per day beginning on March 14, 2023 (the date of the attorney's letter), through the date of judgment. Plaintiffs argue that Defendant did not follow the proper procedures under the Declaration for determining and levying such fines, and that the aggregate fines may not be capitalized to create an inchoate lien on the Property under DUCIOA.

Under Delaware law, a homeowners' association may impose daily fines on a homeowner as part of its enforcement authority, provided that the fines are consistent with the association's rules and regulations. For example, in *Bragdon v. Bayshore Property Owners Association*, *Inc.*,[40] the Court noted that the association

---

[40] 251 A.3d 661 (Del. Ch. 2021).

could impose daily fines and other charges on property owners, which would bear interest and operate as a lien on the owner's property under DUCIOA if not timely paid. However, the fines must adhere to the amounts authorized under the association's declaration and other rules and regulations. In that case, the association deviated from the approved schedule of fines, which led to a legal dispute. The Court found that the association had violated the declaration and DUCIOA and the fines were ultimately not enforced against the homeowner.

> The enforcement provision of DUCIOA provides as follows:

> If a declarant or any other person subject to [DUCIOA] fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award court costs and reasonable attorneys' fees.[41]

In a case of first impression under this enforcement provision of DUCIOA, the Court found that the judge has broad discretion to determine what constitutes an appropriate case to enforce an assessment of fines, or not enforce an assessment of fines, and that bad faith is not a requirement. In *Bragdon*, the association's conduct before the litigation was arbitrary and capricious, and its conduct during the litigation was unreasonable. Either of these suffices under DUCOIA, so no fines

---

[41] 25 *Del. C.* § 81-417(a).

were imposed on the homeowner.[42]

## Attorneys' Fees

In its accounting, Defendant has asserted attorneys' fees and expenses against Plaintiffs, first in the amount of $4,409.60 (before any litigation) and as of September 3, 2024, in the amount of $2,436.10. In addition, in its pleadings Defendant seeks any additional attorneys' fees and expenses incurred in connection with this litigation. Plaintiffs argue that attorneys' fees were not properly included as assessments under the Declaration and should not be capitalized to constitute an inchoate lien on the Property under DUCIOA.

In Delaware, litigants typically pay their own attorneys' fees.[43] There are exceptions to the rule – bad faith assertion of claims, statutory and contractual fee shifting, and in equity.[44] DUCIOA contemplates fee shifting in appropriate cases. In the *Bragdon* case, the Court also addressed the shifting of attorneys' fees and costs to the other party. The Court acknowledged that the association could shift attorneys' fees and costs to the homeowner, which would bear interest and operate as a lien on the owner's property under DUCIOA if not timely paid. However, the attorneys' fees must be reasonable (under the independent Delaware law of the reasonableness of

---

[42] 251 A.3d 661, at 689.

[43] *Maurer v. Int'l Re-Ins. Corp.*, 95 A.2d 827, 830 (Del. 1953).
[44] *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1044 (Del. 1996).

attorneys' fees)[45] and must adhere to the amounts authorized under the association's declaration and other rules and regulations. In this case, the association had run up significant attorneys' fees in what the Court deemed arbitrary and capricious litigation and had behaved as an unreasonable litigant. Either of these suffices under DUCOIA to shift attorneys' fees. The judge has broad discretion to determine what constitutes an appropriate case to enforce an award of attorneys' fees, and that bad faith is not required to shift such fees. Thus, even though the Court did not find that the association acted in bad faith, in its discretion it declined to shift the association's attorneys' fees to the homeowner and instead shifted the homeowner's attorneys' fees to the association.

In my view, neither party to this litigation has acted unreasonably or in bad faith or caused vexatious litigation. Therefore, in my discretion, I will not require

---

[45] In Delaware, courts often exercise discretion in determining reasonable attorneys' fees, considering the five factors set forth in *In re Dell Technologies Inc. Class V Stockholders Litigation*, 326 A.3d 686 (Del. 2024): (1) the results achieved; (2) the time and effort of counsel; (3) the relative complexities of the litigation; (4) any contingency factor; and (5) the standing and ability of counsel involved. Delaware Rule of Prof. Conduct, Rule 1.5 lists factors to consider in determining the reasonableness of a fee, including the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the fee customarily charged in the locality for similar legal services, the amount involved and the results obtained, the time limitations imposed by the client or by the circumstances, the nature and length of the professional relationship with the client, the experience, reputation, and ability of the lawyer or lawyers performing the services, and whether the fee is fixed or contingent. In contractual fee-shifting cases such as this one, the reasonableness of fees is assessed by reference to the legal services purchased by those fees, not by the degree of success achieved in the litigation.

Plaintiffs to pay any fines, and any existing fines shall be removed from the books and records of the association. This means that such fines shall not continue to act as a lien on the Property under DUCIOA.

Further, each party shall pay its own attorneys' fees and costs, as is the general rule under Delaware law. Plaintiffs shall not be responsible for Defendant's legal fees, and *vice versa*. Any of Defendant's existing attorneys' fees and costs currently assessed to Plaintiffs shall be removed from the books and records of the association. This means that such attorneys' fees and costs shall not continue to act as a lien on the Property under DUCIOA.

I discussed this result with counsel at oral argument, and Defendant's counsel at least tacitly agreed that not imposing fines, attorneys' fees and costs was reasonable in this case.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** Under the terms of the Declaration, the Vehicle may not be parked in the driveway of the Property.

No fines shall be payable by Plaintiffs to Defendant, and each party shall pay its own attorneys' fees and expenses.

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz
Craig A. Karsnitz

cc:    Prothonotary